H C PRODUCTS CO., Plaintiff,

v.

AIR VENT, INC. and Laurence Edward Curran, Jr., Defendants.

No. 77–1099.

United States District Court,
C. D. Illinois.*

April 6, 1979.

Decision and Order Denying Post Trial
Motion April 25, 1979.

---

* This case, filed in Peoria, Peoria County, is now a Central District case, by virtue of Sections 4(b) and 5 of the Federal District Court Organization Act of 1978, Public Law 95–408 (92 Stat. 883).

Donald G. Beste, Peoria, Ill., William E. Lucas, Keith K. Nicolls and John K. Lucas, Chicago, Ill., for plaintiff.

William J. Voelker, Jr., Peoria, Ill., Myron C. Cass, I. Irving Silverman, John T. Winburn, Chicago, Ill., for defendants.

## DECISION AND ORDER

ROBERT D. MORGAN, Chief Judge.

This is a suit for alleged patent infringement and unfair competition. The plaintiff, a subsidiary of Aluminum Corporation of America (ALCOA), is a Delaware corporation having its principal place of business at Princeville, Illinois, in this district. Defendant Air Vent, Inc. is a Delaware corpo-

ration having its principal place of business at Peoria, Illinois. The defendant Curran is the president of defendant Air Vent and a resident of Peoria, Illinois.

Two patents are involved in this suit. Both are owned by ALCOA, with plaintiff as designated nominee thereof. Each patent relates to roof ventilators.

Plaintiff is regularly engaged at its plant in Princeville, in the manufacture of roof ventilating systems. Its products are marketed solely through Alcoa Building Products (ABP), another wholly owned subsidiary of ALCOA. Defendant is regularly engaged at Peoria, Illinois, in the manufacturing and marketing of roof ridge ventilators.[1]

Following a bench trial upon the issues of validity and infringement of the patents and collateral issues related to claims of unfair competition, and the submission by the parties of post-trial briefs and proposed findings and conclusions, the cause is before the court for decision on the merits.

### Jurisdiction

■ Through proceedings in this case, including the final pre-trial conference and the pre-trial order, defendant did not question jurisdiction as to any claim. For the first time, in its trial brief, defendant challenges jurisdiction over a part of the claim alleging unfair competition. Specifically, it asserts that there is no federal jurisdiction over the claim that it was guilty of unfair competition in that it allegedly lured away from plaintiff and employed a certain person, because the employment of that person by defendant was subsequent to defendant's alleged initial infringement of the patents by its commencing the manufacture and sale of one of its accused product. It also contends that there is no proper jurisdiction over so much of plaintiff's claim as asserts defendant's publication of an advertising brochure, because that publication was not made until after this suit was filed.

Thus it is true that those issues involve proof which goes beyond the proof relevant to the patent issues. However, since jurisdiction has been assumed by the parties and the court to exist until the time of trial, and the relevant evidence is now in the evidentiary record, defendant's challenge to jurisdiction will be rejected.

In one sense, defendant misconstrues its own challenge to jurisdiction, to the extent that it recites and relies upon the hornbook rule that subject-matter jurisdiction cannot be created by the consent of the parties if, in fact, no jurisdictional basis exists. The court has subject-matter jurisdiction in this cause. The only question which defendant really presents is the question whether this court should exercise its discretion and accept pendent jurisdiction of a subject matter which lacks an independent jurisdictional basis. Pendent jurisdiction is accepted.

### The Patents in Suit

Patent 235 [2] relates to the subject of roof ventilators designed for attic ventilation. The patent discloses both a ridge ventilator and an eave, or soffit, ventilator.

The described ridge ventilator has a unitary top formed of two connected portions which extend outwardly and downwardly disposed from the apex of the top member. They are connected at their outer longitudinal marginal limits to outer side walls, each at the same height level. Louvered panels extend inwardly from the bottom of the two side walls, each being angularly disposed upwardly from its outer limit to its inner limit. Spaced planar inner side walls depend from the inner edges of the louvered panels to form a throat which is open to the interior of the attic by way of an open channel in the sheathing of the roof. Flashing members extend outwardly from the bottom of the inner walls which form the throat as a means for securing the structure to the roof. The panel has openings to admit the passage of air, which are equipped with louvers inside the structure,

---

1. The singular, "defendant," herein refers to Air Vent only, unless the context otherwise requires.

2. Smith, et al., U.S. Patent 3,073,235, issued January 15, 1963.

which are oriented upwardly toward the top of the structure and outwardly toward the side walls. The structure was designed to remove moisture from air passing into the attic through the ventilator. The patent states that the configuration and placement of the louvers directs air entering the openings upward and outward toward the outside wall, with the result that the air must then change direction before it can reach the throat and enter into the attic. The patent states that that forced change of direction causes moisture borne by the air to be removed and drained through the lowest ends of the panel openings to the exterior of the ventilator.

The eave ventilator described in the 235 patent is essentially a short one-half of the upper structure of the ridge ventilator. It is comprised of a top portion having two longitudinal marginal portions. The inner marginal portion attaches to the sheathing of a roof, and the top extends outwardly therefrom and angularly compatible with the plane of the roof to an outer side wall of the ventilator. The ventilator portion, which has openings equipped with louvers oriented in the direction of the side wall, extends between the lower extreme of the outer side wall of the unit and the wall of the building. In design and configuration the eave ventilator is essentially the same as that portion on one side of the ridge ventilator which extends outwardly from the inner wall forming the throat to the outer side wall, exclusive of the flashing member.

The 235 patent further teaches the use of a molded, flexible plug, conformed to the configuration of the interior end of the ridge ventilator to seal the end.[3] It also discloses a plug-type connector, which is simply a wider version of the end plug, designed to be inserted to connect together two sections of a ventilator. It further teaches the use of a similar plug to seal the ends of eave ventilators.

The 921[4] patent, entitled "Roof Ridge Ventilator," is an improvement patent over the 235 claims. The original patent, from which the 921 derived, issued August 2, 1965, upon an application which was co-pending with the application which led to the 235. The only improvement claimed over the 235 was the addition of baffles secured by nailing, right angularly to the plane of the flashing parts of a ridge ventilator as described in the 235 patent. The only purpose stated for the addition of the baffles was for the further removal of moisture by causing a change of direction of the air passing over the baffles prior to that air reaching the louvered openings.

*The Claims in Issue*

In its original complaint, plaintiff asserted claims 2, 8, 9 and 10 of the 235 patent against the ridge ventilator being then marketed by the defendant, which is identified by the production number RV101A. Subsequently, the complaint was amended to withdraw claims 2 and 8, leaving the complaint in the posture of alleging infringement by the 101A device of claims 9 and 10 only. Those claims are not asserted against the RV101B device which defendant now manufactures and offers for sale.

Plaintiff asserts claim 4 of the 921 patent against both the 101A and 101B production devices.

*The Accused Devices*

Defendant was incorporated on November 5, 1976, for the purpose of manufacturing and selling roof ridge ventilators. Beginning in January, 1977, defendant began offering for sale, within this judicial district, its accused ventilator, which is identified as the RV101A. It first sold the product on April 13, 1977. On October 3, 1977, after the commencement of this suit, it began offering for sale the accused device identified as RV101B, which replaced the 101A. The 101B is the only accused device being now made and sold.

3. It also teaches that a cap of suitable material may be used, instead of the plug, for that purpose.

4. Smith, U.S. Reissue Patent 25,921.

The general exterior configuration of both the 101A and 101B ridge ventilators is substantially identical to the structure described for ridge ventilators in the 235 patent and, by reference to 235, described in the 921 patent. The only distinction between the 101A model and the 101B model is in the configuration of the louvers. In the 101A the louvers were oriented upwardly and outwardly toward the outside walls. In the 101B model the louvers are oriented upwardly and inwardly toward the center of the device. Both devices employed a precast plug for end sealing and sectional joinder.

### Infringement of 235

The 101A device did not infringe either claim 9 or 10 of the 235 patent.

Claim 9 of the patent depends from claim 8. Claim 10 of the patent depends from both claims 8 and 9. Thus, the court must first look to claim 8 to define the combination which both 9 and 10 do claim.

Claim 8 is as follows:

8. In a ventilating structure of long and relatively narrow form integrally fabricated of sheet material for mounting to extend longitudinally of a roof, the combination comprising a top having inner and outer marginal portions extending longitudinally of the structure at height levels such that the outer marginal portion is below the inner marginal portion thereof, a side wall integral with the top and extending downwardly at an angle to the top along the outer marginal portion thereof, a generally planar panel integral with the side wall and extending inwardly from the bottom thereof in spaced and opposed relationship to the top so as to be overhung by the top, said panel having therein a plurality of relatively small openings which are separated from one another both longitudinally and laterally of the structure and which are relatively narrow laterally of the structure and said panel portion also having thereon an integrally formed louver extending into the ventilating structure over each of said openings in acute angu-

lar relationship to the plane of the panel and upwardly toward the top as well as outwardly toward the side wall of the structure.

Claims 9 and 10 are as follows:

9. In a ventilating structure as defined in claim 8, the combination being further characterized by means for closing an end of said ventilating structure, said means comprising a molded plug of relatively flexible and resilient non-metallic material forming a closure wall of substantial thickness and having a shape and size to fit snugly into the interior of an end region of said ventilating structure with surfaces in contact with said top, said side wall and said panel.

10. In a ventilating structure as defined in claim 9, said means for closing an end of said ventilating structure having a length longitudinally of the structure for effecting firm engagement of one end portion thereof within one length of said structure while another end portion of said means projects from said one length of the structure for effecting firm engagement within another length of like ventilating structure.

It is evident, from a reading of those claims, that they do not, whether singly or in combination, describe the accused structure. The accused structure incorporates elements which cannot be found described in any combination of those claims. Although plaintiff does not expressly so state, it seems to rely upon the fact that the 101A employed an end plug and joinder devices which are alleged to be the same as the end plug described in claim 9 and the joinder member described in claim 10.

Plaintiff must live with the patent claims as they were written. Claim 9 is not limited to the end plug. Claim 10 is not limited to a means for the joinder of separate sections of a roof ventilator. Each of those claims claim a combination which incorporates all elements of claim 8, adding only an additional element, or elements. Expert testimony related to the interpretation of basic claim 8 is consistent only with a construction that the claim recites only the

elements of an eave ventilator as described in the 235 patent.[5] The accused device is a ridge ventilator, which is not fully described in prior claim 8.

It might be assumed that claim 9 or claim 10 would be valid if they could be construed as limited to the end plug described in the one instance and the joinder means described in the other, but both define a combination embodying all elements of claim 8. Thus, to find infringement, every element of the dependent claim must be found in the accused device. Both the language of those claims and the testimonial evidence require a finding that claims 9 and 10 cannot be so limited. The expert witness for each party testified that neither the end plug nor the joinder means added anything to the device in claim 8. The end plug and the joinder means would serve the same function irrespective of the orientation of the louvers and irrespective of the relative configuration and placement of other elements. Other elements of the combination would function in the same way in the absence of the end plug or the joinder means. The latter elements have a function which is entirely unique from the combination claimed in claim 8; namely, they seal the ends, or they seal joints in a sectionalized claim 8 structure, to prevent the intrusion of the elements into otherwise unprotected areas of a total system.

### Validity of the 235 Patent

The view which the court takes of this issue is, to a degree, incompatible with the respective positions of both parties. The view of the court, succinctly stated, is that the question of the validity of claims 9 and 10 is not properly before the court in view of the fact that claim 8, from which both claims 9 and 10 depend, would be invalid if that claim was interpreted to relate to a ridge ventilator. Stated differently, that claim claims the elements of the eave ventilator described in the 235 patent, but the same is incomplete and completely vague if the same be read, as plaintiff insists that it must, to embrace a ridge ventilator as well.

A court must construe a claim in such manner as will render the same not vague and indefinite, and thus invalid under the provisions of 35 U.S.C. § 112. *Coupe v. Royer*, 155 U.S. 565, 577, 15 S.Ct. 199, 39 L.Ed. 263 (1895); *Technitrol, Inc. v. Control Data Corp.*, 550 F.2d 992 (4th Cir. 1977), *cert. denied*, 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 79. When claims 8, 9 and 10 of the 235 patent are so construed, as being descriptive of the elements of an eave, or soffit, ventilator, only, those claims are not descriptive of the accused device. There can exist no possibility of infringement, and no juridically sound reason to move forward to the question whether those claims, if the same were presumed to be not limited by the language of the claims themselves, would satisfy other requirements of the Act for validity. 35 U.S.C. §§ 101, 102, 103.

### The 921 Patent

In the context of this case it becomes necessary to construe asserted claim 4 of the 921 patent before proceeding to specific issues of validity and infringement. This necessity arises because all relevant evidence would tend to indicate that the accused devices achieve a function, and operate in a manner, which that claim does not specifically define.

We cannot wholly accept defendant's opening assertion "that a patentee may not rely" upon a function different from those described in the claim. A claim may be valid even though it is demonstrated that the patentee did not fully understand the precise manner in which his claimed invention worked, when it is shown that a precisely described combination of elements, and a further precisely described interrelationship between those elements, within the claim will sustain the inventive concept. In that instance, when an inventive concept is precisely set forth in a claim, there is no justifiable reason to search through the file wrapper and the specifications to discern whether the patentee really understood his invention. However, the

---

**5.** *Compare,* claims 1 and 2 which describe the ridge ventilator.

latter supposition is not the case here and construction of the claim in the light of the file history and specifications becomes necessary.

The subject of the patent is an improvement over the ridge ventilator described in the 235 patent.[6] In essence, the 921 patent, *inter alia,* added the element of baffles interposed upon each side of the combination of elements recited in describing the 235 ridge ventilator structure. Plaintiff concedes that all elements of claim 4, except the final clause which adds the baffle means, are prior art. Critically, then, the final clause must be construed. In summary, it teaches a baffle means which is superimposed between the direction of flow of the ambient atmosphere and the louvered panel of a ridge ventilator "to deflect wind driven rain and snow from movement directly across the flashing portions toward said inner side walls and the louvered openings in the panel."[7]

The precise meaning of the quoted language is hopelessly obscure unless reference is made to the 235 patent. The ridge ventilator described in the 235 patent is succinctly described as a device comprised of a combination of elements so interposed one with the other and so interrelated as to admit the ambient atmosphere into the sub-roof area of a building, and at the same time to exclude from the sub-roof area driven rain and snow carried by the ambient atmosphere. The patent claimed that last result was achieved by the specific orientation of interior louvers which would compel the ambient atmosphere to change the direction of its movement before impinging upon the open throat, with the result that wind driven precipitates would be extracted before the flow of the ambient atmosphere entered the sub-roof area of the building. The reference in the final clause of claim 4 to "inner walls" and the "louvered openings" tends to incorporate, and further, that same concept by the addition of baffles.

Plaintiff does not agree with that construction. It makes specific reference to the introductory paragraph of the patent specification which recites that the subject of the patent is the movement of air "to and from" a sub-roof area. That paragraph is non-specific. Moreover, it is meaningless unless reference is made to the 235 patent, which described the employment of a ridge ventilator in conjunction with an eave ventilator. Neither patent suggests that air is simultaneously removed from and introduced into the sub-roof area by the same ventilator unit or prime source.

The object of the invention is stated in the specifications to be to meet the desirability for additional weather protection in the "inward movement of air through a ventilator, when accompanied by wind driven snow," to be afforded by a baffle means

**6.** All evidence relevant to the subject indicates that plaintiff had withdrawn from the market roof ventilators incorporating the teachings of the 235 patent before the patent ever issued. The configuration of the louvers, the only element of novelty which realistically could be claimed, failed to achieve the result which the patent application described. Despite the placement and configuration of the louvers, precipitation, principally snow, did intrude through the ridge ventilator and become deposited in the sub-roof space which the system was designed to ventilate.

**7.** Claim 4 is as follows:

"4. A roof ridge ventilator comprising, in combination, a top cover part having side portions extending laterally from a longitudinal ridge in angular relationship to one another, outer side walls extending downwardly from the top portions, panels narrower than the side portions of the top cover part extending inwardly from said outer side walls in spaced relationship to the side portions of the top part and facing downwardly, inner side walls extending downwardly from the panels in spaced and opposed relationship to one another and defining a central open throat therebetween which serves as an air flow passage, side flashing portions extending laterally in opposed relationship to one another from the bottoms of the inner side walls, said panels having louvered openings therein, said side flashing portions extending laterally beyond the panels and outer side walls, and means providing baffles extending upwardly from said flashing portions at positions spaced outwardly of the ventilator from said outer side walls thereof to deflect wind driven rain and snow from movement directly across tne flashing portions toward said inner side walls and the louvered openings in the panels."

"for effecting deflection and change of direction of the flow of air to the louvered openings external to the ventilator." In another context it is recited that to provide weather protection against severe conditions of wind driven rain or snow, it is desirable to employ means, in addition to the louvers, "for controlling and directing the flow of air to the louvered vent openings on the outside of the ventilator." Such latter means are described as baffles so situated "that they do not unduly restrict the flow of air to the louvered openings, but so that they insure that air flowing to the louvered openings must change direction after passing the baffles in order to pass through the louvered openings." The baffle means are described as extending longitudinally along each section of ridge ventilator, except that small gaps in the baffles may be provided at points where there are not louvered vent openings to permit the drainage of any water which might "collect on the inside of the baffles." In a final context describing the claimed invention, the specification concludes with the statement that the claimant had "also provided improved weather protection in the form of baffles" which necessitates "the change of direction of the flow of air to the louvered vent openings at the exterior of the ventilator structure."

Given the fact that the 921 is an improvement over the ridge ventilator of the 235 patent, and the quoted references in the specifications, claim 4 must be construed as describing a ridge ventilator for the admission of air into the sub-roof area of a building. The baffle is employed to deflect the ambient atmosphere from a direct course, by causing a change of direction of that atmosphere before it impinges upon the inner side walls and the louvered panel of the ridge ventilator. It cannot be construed as teaching a combination which functions to extract air from the interior of the building through the louvered openings. To so construe it would require that the specification, the file history, and the 235 patent be ig-

nored and that the ambiguous final clause of claim 4 be read in utter limbo. There is lacking any precisely defined spatial relationship between the baffles and the ridge ventilator proper, and no definition as to the precise interrelationships between those divers elements. Absent such information in the claim, it cannot be legitimately asserted that the claim teaches the construction of any combination of elements which would function to exhaust air from the interior of the building through the ridge ventilator.

### Infringement of Claim 4

If it be assumed that claim 4 of the 921 patent is valid, it is not infringed by either of the accused devices.

A physical comparison of the accused devices with the language of claim 4 reveals that the elements mentioned in the claim, including the baffle means, are all present in both the 101A and 101B structures.[8] There is only one distinction to be noted. Claim 4 includes planar side walls which define a throat. Both the 101A and the 101B employ a radial throat opening. It is necessary to find that that distinction would be insignificant to the issue of infringement. The radial throat is an equivalent means and thus insufficient to avoid infringement.

The court must find, however, that the accused devices, although substantially identical to the enumeration of elements employed, do not infringe the teachings of claim 4 as above construed. Both the 101A and 101B devices are so constructed that the baffles deflect the ambient atmosphere over the top of the ridge ventilator to which they are appended. That deflected atmosphere does not impinge upon either an inner side wall or the louvered openings in the ventilator structure. The deflection of prevailing atmosphere over the apex of the ventilator creates what is called a venturi effect. The passage of the prevailing wind,

---

8. Claim 4 of the 921 patent contains no reference to the specific orientation of the baffle means included as an element of that claim.

first over the baffle, and secondly over the apex of the ventilator, creates a low-pressure area, or partial vacuum, between the baffle and the principal ventilator structure. The greater pressure within the attic portion of the building, such air being also probably warmer than the ambient atmosphere and thus inclined to rise, causes the air within the attic to be exhausted through the ridge ventilator to fill that created partial vacuum. Ventilation of the attic, i. e., the movement of air therethrough, is achieved by the simultaneous movement of air into the attic through eave ventilators or other avenues of ingress.

Thus, this file reflects a substantial identity between accumulated elements. It also reflects that defendant has so arranged those elements that they accomplish a mutually desired result, i. e., attic ventilation, by a means related to the physical properties of the atmosphere which claim 4 cannot be construed to envision, much less to teach. Claim 4 is not infringed by either of the accused devices.

### Validity of Claim 4

It must be concluded that claim 4 of the 921 patent is invalid.

At the outset of a determination of validity, we reiterate plaintiff's assertion that the 921 patent is not limited to an intake ventilator, but that it does also describe an exhaust ventilator, i. e., a combination functioning by employment of the venturi effect. The 921, being an improvement over the 235 ridge ventilator, is limited to the operation defined in the 235 patent, unless otherwise specifically described and claimed. E. g., E. Edelmann & Co. v. Triple-A Specialty Co., 88 F.2d 852 (7th Cir. 1937); Hajek v. Radio Corporation of America, 83 F.2d 1, 2 (7th Cir. 1936). In a prior context the court has extensively summarized the relevant teachings of the 921 patent and has construed claim 4 as limited to a ridge intake ventilator. The specifica-

tion does not even hint at a function based upon operation of the venturi effect. Moreover, the claims fails to define, and the specification fails to describe, the critical spacing between the baffles and other elements of the ventilator which would be requisite to bringing the venturi effect into play. The court is fully cognizant of those decisions, exemplified by Tapco Products Co. v. Van Mark Products Corp., 446 F.2d 420, 427 (6th Cir. 1971), that a patentee need not have fully understood the manner in which his claimed invention worked, so long as he fully described an inventive concept which achieved a result which he did not foresee. That principle cannot be invoked here. The critical interrelationship between elements which would produce a venturi-effect operation is neither described nor claimed.

As a prerequisite to validity, patent claims must point out and distinctly describe the subject matter which the patentee regards as his invention. 35 U.S.C. § 112; Rockwell v. Midland-Ross Corporation, 438 F.2d 645, 653 (7th Cir. 1971); Pambello v. Hamilton Cosco, Inc., 377 F.2d 445, 447 (7th Cir. 1967). If claim 4 were construed to include an exhaust ventilator, it would thus be invalid under Section 112.

It must be concluded that claim 4 of the 921 patent is invalid under 35 U.S.C. § 103 as having been obvious to persons skilled in the art. The Halvorson patent[9] and the 235 patent disclosed every element of claim 4 except the use of baffles. The employment of baffles, both to divert air into a system, while changing the direction of flow,[10] and to exhaust air from a system by employment of the venturi effect,[11] was old in the art.

The art involved is the art of ventilation. The art was profuse, both in the realm of the function of intake ventilators and the function of exhaust ventilators. The level of skill of those skilled in the art was high.

9. Halvorson, U.S. Patent 3,036,508.

10. Bell, U.S. Patent 2,365,328.

11. Hamm, U.S. Patent 1,663,630; Garland, U.S. Patent 1,574,880; Garland, U.S. Patent 1,621,-531; Muirhead, U.S. Patent 2,030,388; McDermott, U.S. Patent 2,072,461.

It would have been obvious to such skilled persons to have combined the combination of Halvorson and/or the 235 patent with the baffle of Bell, Hamm or divers other prior art patents, to achieve the result claimed as invention.

■ The presumption of validity created by 35 U.S.C. § 282 has not been overlooked. A part of the prior art in evidence before this court is deemed to be more pertinent than the references directed to the attention of the patent examiner. For that reason, the presumption of validity does not obtain for this patent. *Republic Industries, Inc. v. Schlage Lock Company*, 592 F.2d 963, pp. 972, 974 (7th Cir. 2/1/1979, No. 77–1872), slip opinion pp. 18, 21.[12]

■ Claim 4 of the 921 patent would have been obvious to persons skilled in the art at the time when application was filed. It is therefore invalid under 35 U.S.C. § 103.

### The Unfair Competition Charges

■ In the light of the evidentiary record, these charges by plaintiff are seen to be constructed out of whole cloth. Plaintiff has wholly failed to sustain its burden of proof in that regard.

The salient facts are largely stipulated. Defendant Curran began employment with ALCOA in 1955. In 1971 he was transferred by ALCOA to plaintiff as the general manager of marketing and sales. In 1975 ABP became the marketing arm for plaintiff's products, and Curran was assigned further responsibilities related to national account sales by ABP. His employment was terminated by ALCOA in July, 1976. Later in the same year he contacted Jim Walter Window Components, an Iowa organization, and engaged Walter to begin construction of the product which became the Air Vent 101A ridge ventilator. On November 5, 1976, Curran, in association with a Marvin H. Hult of Peoria, Illinois, incorporated the defendant corporation for the purpose of manufacturing and selling roof ridge ventilators.

Peg Anderson, an employee of the plaintiff, did leave that employment in the winter of 1977 and obtained employment with defendant. Prior to 1975, Peg Anderson did function as the manager of customer services for the plaintiff. In the latter year, ABP assumed all responsibility for sales and marketing of plaintiff's products. She remained with plaintiff until late 1977. Precisely what she did for plaintiff between 1975, when ABP became the sole market outlet for plaintiff's products, and the time when her employment was terminated is not shown by the evidentiary record. Why she left her employment and the circumstances of her leaving are likewise not shown. What the evidentiary record does reveal is that other persons at plaintiff were qualified to do, and were carrying on, the work which Peg Anderson did do. Significantly, also, plaintiff's president, when asked on a deposition to identify the "key employee" who had left plaintiff for employment with defendant, was unable to identify such person.

The third arm of this unfair competition charge against defendant is the claim that defendant misappropriated plaintiff's advertising materials and that it represented its "inferior product" as being the equal of plaintiff's "superior product." The charge sounds good, but the only evidence relevant to the charge is the fact that defendant's advertising is handled by the same agency which had represented the plaintiff prior to 1975 and ABP's entry into the picture. A

---

12. There would appear, also, to be some merit to defendant's argument that the evidence does not reveal that the structure described in claim 4 is an operable invention. Plaintiff manufactures separate models of ridge ventilators. The one has the baffle affixed as a part of the total ventilator structure. The other has the baffle as a separate element to be affixed to the total structure in the course of its installation on a roof. Neither model, as offered for sale, is marked to reflect that it is manufactured under the 921 patent. Moreover, plaintiff's commercial products are shown to operate as exhaust, not intake, ventilators. Thus, plaintiff's commercial products do not practice the invention claimed in the 921 patent. The record amply supports the utility of those commercial products, but it is substantially silent to any evidence that the 921 claim is utilitarian.

comparison of the exhibits of plaintiff's brochures and defendant's brochures understandably reflects some similarity of content. It could not be otherwise. Ridge ventilators operate in accordance with the dictates of scientific law. This charge is frivolous unless plaintiff is willing to take the position, which it does not exactly articulate, that it has the exclusive right to extol the virtues of ridge ventilators.

It is not contended, and certainly not proved, that either Curran or Peg Anderson took from plaintiff any customer lists or any other documentary or confidential information. It may be presumed that they did take with them, in memory, such skills and information which they, respectively, may have acquired during employment with plaintiff. No cause of action could rest upon that tenuous thread. *Schulenburg v. Signatrol, Inc.*, 33 Ill.2d 379, 212 N.E.2d 865, 869 (1965); *R. B. Paulsen & Co. v. Lee*, 95 Ill.App.2d 146, 237 N.E.2d 793, 797 (1st Dist. 1968).

There is wholly lacking any proof that any person has been misled by defendant's advertising, or that plaintiff lost a single customer, or was otherwise damaged, by any of the activities of defendant charged in this context.

### The Claim of Personal Liability Against Curran

■ The evidentiary record is consistent only with a finding and conclusion that the manufacture and marketing of the accused products were corporate activities of the defendant corporation. There is no proof that Air Vent is the alter ego of Curran.

The defendant, Curran, is, therefore, not personally liable for any acts of infringement or inducement charged in the complaint.

### Defendant's Claim for Attorney's Fees

■ Defendant argues that the court should find and conclude that this is an exceptional case which should induce the court, in its discretion, to award to it its attorneys' fees pursuant to 35 U.S.C. § 285.

In the exercise of a sound discretion, that argument will be rejected. It should be noted that the evidentiary record does require the inference that there was a substantial omission of candor on plaintiff's part in its dealings with the Patent Office on both the 235 and the 921 applications. Yet, it is this court's experience that a like inference can be deduced from the prosecution history of essentially all patent applications, and that a case should be found to be exceptional only if it affirmatively appears that wilful conduct by the applicant, as opposed to inattention or neglect, is inherent in such inferential delict. In the court's view, that degree of wilful misconduct is not reflected by this file.

### Conclusion and Judgment Order

The court's findings of fact and conclusions of law, pursuant to Rule 52, F.R. Civ.P., are incorporated in the foregoing memorandum of opinion, in all respects as suggested by the context. It is expressly found and held that claim 4 of the 921 patent is invalid and unenforceable.

Upon those findings and conclusions IT IS ORDERED that judgment is entered for the defendants and against the plaintiff upon the complaint.

IT IS FURTHER ORDERED that defendants' demand for attorneys' fees is DENIED, but that defendants shall recover from plaintiff their chargeable costs of suit.

### DECISION AND ORDER ON POST TRIAL MOTION

Plaintiff's Motion for New Trial and Amendment of Judgment, while appropriate as a motion for reconsideration, and timely under Rule 59, F.R.Civ.P., must be denied. With the exception of two inexcusable errors of language, which are confusing but not significant, this court, upon reconsideration, is satisfied with the Decision and Order filed April 6, 1979, and plaintiff's vigorous objections thereto are now more properly addressed to the Court of Appeals.

The word "obtuse" in the second sentence of the third full paragraph on page 14 of the decision in manuscript was intended to be "profuse." The typographical error apparently arose and escaped detection through use of such an exotic word rather than "abundant," which the court considers the pertinent prior art to be, and have been.

It is also true that one could be a patent infringer by inducing his corporation to infringe, without being found to be the alter ego of the corporation; and this is not clear in the original decision, finding no basis for personal liability of Mr. Curran. This is clearly not important to the decision, however, which finds no infringement to have occurred.

Accordingly, IT IS ORDERED that the Motion for New Trial and Amendment of Judgment is DENIED.