RICHDEL DIVISION OF GARDEN AMERICA CORP., Plaintiff,

v.

AQUA-TROL CORP., Defendant.

No. CV 86-3829.

United States District Court, E.D. New York.

March 3, 1988.

Kirschstein, Kirschstein, Ottinger & Israel, P.C., Martin W. Schiffmiller, New York City, Jessup, Beecher & Slehofer (Keith D. Beecher, of counsel), Santa Monica, Cal., for plaintiff.

Bauer & Amer, P.C., Myron Amer, Mineola, N.Y., for defendant.

## MEMORANDUM AND ORDER

DEARIE, District Judge.

Plaintiff, Richdel Division of Garden America Corporation, alleges that the defendant, Aqua–Trol Corporation, has infringed Richdel's patent for a solenoid-controlled valve that is used to regulate the flow of liquids in irrigation systems and other applications. Plaintiff has moved for partial summary judgment that Aqua–Trol's valve infringes Richdel's patent; defendant has cross moved for summary judgment that the accused valve does not infringe the patent. The material facts that underlie the legal determination of infringement *vel non* are not in genuine dispute; hence, summary judgment is appropriate. *Heinemann v. United States,* 796 F.2d 451 (Fed.Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1565, 94 L.Ed.2d 758 (1987).

## FACTUAL BACKGROUND

### A. The Valves

In general terms, both plaintiff's and defendant's valves are constructed and operated in a strikingly similar manner. Each valve has a main body that consists primarily of a squat cylinder. Projecting laterally from opposite sides of this cylinder are two tubes, one a fluid inlet and the other an outlet. The circumferences of the inlet and

outlet tubes are oriented perpendicularly to the circumference of the main cylinder of the valve body.[1]

On top of the main cylinder rests a cap. The walls of this cap, combined with the top of the main cylinder, form a relatively small upper chamber in which fluid can be stored. The hydrostatic pressure of this fluid, pressing on the top (called the diaphragm) of the main chamber, keeps the valve closed by holding the diaphragm in a position that prevents flow from the inlet to the outlet.

In order for the valve to open, fluid must drain from the upper chamber. This drainage is provided by a narrow tube, called the bleed tube, that protrudes through the diaphragm into the upper chamber. When the valve is closed, the opening to the bleed tube is covered by a plunger. When the operator opens the valve, the mechanical effect is to displace this plunger; fluid then drains through the bleed tube into a small tube within the main cylinder and flows out the outlet tube. The reduced downward pressure on the diaphragm causes the diaphragm to be forced upward by the pressure of fluid in the inlet. In its "unseated" position, the diaphragm no longer prevents flow, and the irrigation water or other liquid moves across the main cylinder, from inlet to outlet.

The bleed tube plunger is controlled by the electromagnetic field of a solenoid that is attached to the valve cap. When current flows through the solenoid (i.e., it is turned "on"), the plunger withdraws from the bleed tube and the valve is opened. When the current is switched off, the plunger is returned to its position blocking the bleed tube.

By itself, replacing the plunger in position would not be enough to close the valve. The hydrostatic pressure in the upper chamber, which was lost when fluid drained out the bleed tube, must be restored. There must be a way, then, for fluid to return to the upper chamber. That

is achieved by a small opening in the diaphragm that forms a narrow ring (the "annulus") around the bleed tube. The main cylinder is constructed in such a way that liquid flowing through it rises through the annulus back into the upper chamber. Thus, once the plunger is replaced atop the bleed tube opening, the water rising through the annulus restores the needed pressure in the upper chamber. The valve closes, to be reopened again by turning on the current and repeating the whole process.

### B. The Patent in Suit

The patent in suit, number 4,505,450, was assigned to Richdel, Inc. (predecessor of plaintiff) by its inventors. The patent describes a "solenoid-operated pilot-actuated valve," substantially as described above. However, the patent in suit contains limiting language that is central to the motion at bar.

The patent's first claim[2] discloses that the diaphragm and cap assembly, which defines the upper chamber of the valve, has "an integral peripheral seal interposed between said cap portion and said body portion [and] an open-ended nut threaded to said body portion coaxial with said cap portion to said body portion." This method of bonding top to bottom was represented, and ultimately accepted, as a significant advance over prior art, because the caps on previous valves of this type had been secured by a multiplicity of screws. *See* Defendant's Brief at 14–15. This language is critical to defendant's denial of infringement.

Defendant also attempts to deny infringement of another part of the patent claim. The patent recites that a "bushing-like guide member form[s] an annular passage with the outer surface of said bleed tube for restricted flow of fluid from the lower chamber into the upper chamber at a rate less than the rate of flow of fluid through said bleed tube when the bleed

---

1. The diagram of plaintiff's valve that was included in the patent is attached as Appendix I.

2. The patent in suit states two claims. The second claim is identical to the first, except that the valve described in the second claim has "an internal metal cup-shaped reinforcing member."

tube is open." Defendant urges that this language, if properly interpreted, absolves defendant of infringement.

### DISCUSSION

The requirements for summary judgment in patent cases are similar to those for any other civil suit. *Moeller v. Ionetics, Inc.*, 794 F.2d 653, 656 (Fed.Cir.1986). "Summary judgment is authorized where it is quite clear what the truth is." *Hodosh v. Block Drug Co., Inc.*, 786 F.2d 1136, 1141 (Fed.Cir.), *cert. denied,* — U.S. — 107 S.Ct. 106, 93 L.Ed.2d 55 (1986). In the present case, the motions raise the questions of whether the patent is valid and enforceable, and whether it has been infringed. Summary judgment is appropriate on all issues.

#### A. Patent Validity and Enforceability

■ The Court grants summary judgment to plaintiff on the issues of patent validity and enforceability because only conclusory assertions of invalidity and unenforceability are before the Court. Moreover, with respect to patent validity, plaintiff would be entitled to summary judgment as a matter of law even were the Court to consider the publications filed by defendant in support of that defense.

A brief recap of the papers filed in connection with the instant motion is in order. Plaintiff's complaint alleges four claims for relief, the first of which is patent infringement.[3] Defendant's answer denied infringement and alleged, as affirmative defenses, invalidity of the patent, unenforceability of the patent because of misuse, and non-infringement.

Plaintiff moved for partial summary judgment, seeking judgment on the patent infringement claim only. The plaintiff's supporting papers, including its statement of uncontroverted facts pursuant to Local

Rule 3(g), made no reference to defendant's affirmative defenses.

Defendant filed a memorandum and 3(g) statement in opposition to plaintiff's motion.[4] The 3(g) statement listed as controverted facts the following:

"6. The claims of the patent in suit do not define anything obvious over [sic], and hence are unpatentable in view of the prior art, including, without limitation, the prior art of record, which was correctly evaluated by the Examiner when he rejected the claims and incorrectly evaluated by the Board of Appeals when it allowed the claims.

7. The claims of the patent in suit are not enforceable for one or more of the reasons set forth in the answer."

These were the sole references, in any of defendant's papers, to the invalidity and unenforceability defenses. Neither defendant's memorandum of law, nor the affidavit of Ronald J. Weiss (vice-president of defendant) submitted in support of defendant's position, nor defendant's reply memorandum, makes any mention of these defenses. No proof of any kind was presented in support of these defenses to the court in connection with the summary judgment motions, much less proof sufficient to raise a material issue of fact. Accordingly, plaintiff's motion for summary judgment is granted with respect to validity and enforceability of the patent. *See* Fed.R.Civ. P. 56(e); *Beal v. Lindsay*, 468 F.2d 287 (2d Cir.1972) (conclusory allegations insufficient to defeat summary judgment motion supported by proof).

■ Some ten weeks after the summary judgment motions were returnable (and argued), defendant filed with the Clerk of the Court, and served upon plaintiff, "Notice Pursuant to 35 U.S.C. 282." As required by the cited statute, the notice informed plaintiff that defendant "asserts invalidity

---

**3.** Plaintiff's remaining causes of action allege Lanham Act violations, common law trademark infringement, and common law palming off. These claims for relief are not subjects of the instant motion.

**4.** Defendant also filed a separate 3(g) statement of uncontroverted facts in support of its cross-

motion. That 3(g) statement dealt only with the supposed failure of plaintiff to make out an infringement claim, and did not discuss the affirmative defenses. The disposition of plaintiff's motion necessarily disposes of defendant's cross-motion as well.

of" the patent in suit and attached two prior patents on which this assertion purportedly would rest. The Notice was in no way directed to the Court or to the summary judgment motions; no application was made to have the Court waive the requirements of Local Rule 3(c) and consider the Notice in determining the summary judgment motion; the opposition to plaintiff's summary judgment motion included no affidavit under Rule 56(f) that would perhaps justify consideration of later discovered facts. In short, the Notice and its attachments are not properly before this Court, and are excluded from consideration, on the motions for summary judgment.

The Court might relax this rule if it were clear that the Notice raised a material issue of fact sufficient to defeat summary judgment. Quite the opposite is the case, however. Defendant attached two prior patents to the Notice. The first, number 2,332,459, is a patent for a waterproof watchcase. It is presented to "demonstrat[e] that in the patent literature a ring nut and cap nut are separate and distinct mechanical components, and that the reference to one is not a reference to the other." Notice at 1. The question of whether a "ring nut" and a "cap nut" are equivalents, however, is relevant only to the issue of whether defendant's valve infringes plaintiff's patent, as will be seen below. None of the teaching of the '459 patent would make plaintiff's valve invention obvious to one of normal skill in the art of valve design.

The second patent attached to the Notice is number 3,412,274, issued to Derek Harris for "a diaphragm valve of the straight through bore type," Harris patent at Col. 1, line 13. Defendant asserts that the Harris patent "discloses ... the use of a ring nut ... instead of clamping bolts to hold the bonnet to the casing." As a matter of fact, the patent does so disclose. The legal conclusion that defendant implicitly invites, however—that plaintiff's invention was obvious—does not follow.

█ Courts have long disfavored the argument that an infringed patent represented no advance over prior art. *E.g., Samp-son v. Silverman*, 275 F. 123 (D.R.I.1921). That disfavor has become enshrined in a statutory presumption of patent validity. 35 U.S.C. § 282; *see Johnson and Johnson v. W.L. Gore & Assocs., Inc.*, 436 F.Supp. 704 (D.Del.1977). Here, defendant's showing is inadequate to prove invalidity. More importantly, it fails to raise a material issue of fact sufficient to defeat plaintiff's motion. Obviousness must be established by consideration of the prior art, as well as the claimed invention, as a whole. The reference must do more than suggest that an innovation "ought to be tried," or is obvious in hindsight; it must itself directly suggest the desirability of a new combination. *Hodosh, supra*, 786 F.2d at 1143 n. 5. The Harris patent is for a valve in which two pieces are held together by an open nut, but there its resemblance to plaintiff's valve ends. The Harris valve is of a conspicuously different and simpler design. Its bonnet is neither the structural nor functional equivalent of the cap *cum* diaphragm assembly of plaintiff's valve. As plaintiff argued with respect to the Examiner's references during prosecution of the patent, there is nothing in the Harris patent "which would teach the structural features of [plaintiff's] particular valve." Defendant's Brief at 14. On the undisputed facts—plaintiff's presumptively valid patent and the Harris patent—the nonobviousness of plaintiff's invention follows as a matter of law. *See Under Sea Industries, Inc. v. Dacor Corp.*, 833 F.2d 1551, 1559 (Fed.Cir.1987); *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 717–19 (Fed.Cir.1984); *Saturn Mfg., Inc. v. Williams Patent Crusher & Pulverizer Co.*, 713 F.2d 1347, 1350–51 (8th Cir.1983); *Mojonnier Dawson Co. v. U.S. Dairies Sales Corp.*, 251 F.2d 345, 350–51 (7th Cir. 1958).

To recapitulate, the Court holds that plaintiff's patent is valid and enforceable because defendant failed to present any proof that would raise a genuine factual dispute on these issues. Further, the Court holds that defendant's Notice Pursuant to 35 U.S.C. § 282 is not properly before the Court on this motion, but that even

if it were, the Court's holding that the patent is valid would be unaffected.

### B. Patent Infringement

The main battleground over which these motions have been fought is, of course, the central issue for resolving the first claim for relief alleged in the complaint: whether or not the defendant's valve infringes the plaintiff's patent. The defendant asserts that its valve is distinguished from plaintiff's in two ways, notwithstanding the virtually identical appearances of the products.[5]

#### 1. Holding the Pieces Together

In the Richdel valve, as described in the patent and above, the cap portion is affixed to the main body by a cylindrical nut, open at both ends, which is threaded to the main body of the valve. The Aqua–Trol valve also has threads on its main body, but the nut and cap, instead of forming two separate pieces, comprise an integral unit that at once *is* the top part of the valve *and* holds that top to the main body. Defendant contends that plaintiff's patent is not infringed because defendant's "cap nut" is sufficiently different from the "open-ended nut" detailed in the patent. There is no factual dispute about the structural difference between the valves. The only question is whether the difference, as a matter of law, defeats the claim of infringement.

■ It is clear that defendant's valve is not a literal infringement of the patent. "Literal infringement requires that every limitation of the patent claim must be found in the accused device." *Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 837 F.2d 1044, 1054 (Fed.Cir.1988). Here, the cap-and-nut systems of the two valves are not literally identical. However, plaintiff has shown infringement of this element of its patent by the doctrine of equivalents.

The doctrine of equivalents permits a finding of infringement when there is "similarity of elements which perform the desired functions." *Jogger Mfg. Corp. v. Roquemore*, 118 F.2d 867, 870 (7th Cir.), *cert. denied*, 314 U.S. 629, 62 S.Ct. 60, 86 L.Ed. 505 (1941); *see also, e.g., Uniroyal, supra*, at 1057. Here, there is no question that the elements are similar in the material respect: both valves include nuts rather than numerous bolts. The functions performed by plaintiff's open nut and defendant's nut that is joined to a cap are identical. The two nuts are plainly substantially similar, perform substantially the same work, and do so in substantially the same way. For purposes of patent infringement, they are equivalents. *Potter Instrument Co. v. Bucode, Inc.*, 184 U.S.P.Q. 662 (E.D. N.Y.1975) (change in form alone does not avoid infringement).

■ Defendant's memorandum of law concedes that the two nuts do substantially the same work—namely, fix the cap into position to seal the upper valve chamber—but suggests that they achieve this result in substantially different ways, because in Richdel's valve the cap is held in position only by the axial force of the nut, whereas in Aqua–Trol's valve the cap is directly screwed on. This cannot raise a fact issue of a "substantial" difference, however. The claim of a patent is entitled to protection from equivalents commensurate with its extent and nature. Here, the critical part of the claim, the key advance over prior art, was using a nut to affix the cap to this type of valve, and defendant has copied the invention with only a minimal change in form.[6] *See Graver Tank & Mfg.*

---

**5.** Examples of plaintiff's and defendant's valves were provided to the Court. Plaintiff's valve was marked Court Exhibit 1 (main body—1A, cap—1B, nut—1C, solenoid—1D); defendant's valve was marked Court Exhibit 2 (main body— 2A, cap/nut—2B, solenoid—2C). Each part had to be marked individually because it was observed that the Aqua–Trol cap and solenoid fit the Richdel main body, and vice versa.

**6.** Defendant produced the earlier watchcase patent, *supra*, to show that "ring nuts" (which de-

fendant insists characterizes plaintiff's nut) are different from "cap nuts." That may well be true, but it is irrelevant to the determination of the summary judgment motions in this case. Different names do not defeat equivalency, *Machine Co. v. Murphy*, 97 U.S. (7 Otto) 120, 125, 24 L.Ed. 935 (1878); *Interdynamics, Inc. v. Wolf*, 698 F.2d 157 (3d Cir.1982), and objects that are quite different may be equivalents of one another for the purposes of a particular patent. *See* 6

Co. v. Linde Air Prods. Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); *Continental Paper Bag Co. v. Eastern Paper Bag Co.*, 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122 (1908). And although equivalence is normally a fact question, *Palumbo v. Don–Joy Co.*, 762 F.2d 969, 975 (Fed.Cir. 1985), summary judgment on the question is not precluded where it is appropriate. *See George v. Honda Motor Co., Ltd.*, 802 F.2d 432 (Fed.Cir.1986); *Moeller v. Ionetics, Inc., supra; Townsend Engineering Co. v. HiTec Co. Ltd.*, 1 U.S.P.Q.2d 1987 (N.D.Ill.1986) [Available on WESTLAW, 1986 WL 13708], *aff'd*, 829 F.2d 1086 (Fed. Cir.1987); *see also Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 36, 50 S.Ct. 9, 10–11, 74 L.Ed. 147 (1929); *see generally Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510–13, 91 L.Ed.2d 202 (1986) (summary judgment may be granted where evidence does not present sufficient disagreement in light of substantive burden).

Defendant also argues that the doctrine of equivalents is foreclosed to plaintiff by "file wrapper" or prosecution history estoppel. Because, during the course of applying for the patent in suit, plaintiff's assignor amended the claim to include the reference to an "open-ended nut," defendant contends that plaintiff is now estopped from asserting any but literal infringement of the claim.

 Defendant's contention is without merit. Express limitation of claims in order to secure a patent can, of course, preclude later claims of infringement by devices that were excluded by the limitation. *E.g., Thomas & Betts Corp. v. Litton Systems, Inc.*, 720 F.2d 1572, 1579–80 (Fed.Cir. 1983). However, the file wrapper estoppel doctrine precludes application of the doctrine of equivalents only to those elements that were rejected by the applicant's limitation of the claims. *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861 (Fed.Cir.1985); *Moore Business Forms, Inc. v. Minnesota Mining & Mfg. Co.*, 521 F.2d 1178 (2d Cir. 1975); *Blaw–Knox Co. v. Hartsville Oil Mill*, 269 F.Supp. 205 (D.S.C.1967), *aff'd in part, rev'd in part on other grounds*, 394 F.2d 877 (4th Cir.1968). "Depending on the nature and purpose of a [claim] amendment, it may have a limiting effect within a spectrum ranging from great to small to zero." *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1362 (Fed.Cir.1983). Here, the applicant for plaintiff's patent limited the claim to valves that used a single nut threaded to the body, instead of numerous bolts, to secure the cap to the body. The asserted advantage of this innovation was ease of servicing the valve. Defendant extensively quotes the prosecution history, *see* Defendant's Brief at 12–15, but fails to cite anything that suggests that the reference to an "*open-ended*" nut was at all material to meeting the examiner's objection. In sum, defendant's valve infringes plaintiff's patent even in light of the patent prosecution history. *Yarway Corp. v. Eur–Control U.S.A., Inc.*, 775 F.2d 268 (Fed.Cir.1985); *Ceramic Process Co. v. General Porcelain Enameling & Mfg. Co.*, 129 F.2d 803 (7th Cir.), *cert. denied*, 317 U.S. 673, 63 S.Ct. 78, 87 L.Ed. 540 (1942); *Dole Valve Co. v. Perfection Bar Equipment, Inc.*, 298 F.Supp. 401, 406 (N.D.Ill.1968), *aff'd*, 419 F.2d 968 (7th Cir. 1969).

Defendant's use of a nut that is integral with, rather than separate from, the valve cap thus does not avoid infringement. Examination of the second asserted difference between the valves results in a similar conclusion.

2. Making the Waters Rise

 Defendant also contends that its valve does not read on the claim in the patent in suit that an annular passage creates "restricted flow of fluid from the lower chamber into the upper chamber at a rate less than the rate of flow of fluid through said bleed tube when the bleed tube is open." With respect to this claim, defense counsel waxes indignant:

> With respect to the claim limitation that the flow passage into the upper chamber should be more restrictive than the flow passage of the fluid through the bleed

E. Lipscomb, Walker on Patents § 22:38 (3d ed. 1987), and cases cited therein.

tube when the valve is open, plaintiff's presentation is truly shameful.

Plaintiff nowhere states that the claimed relationship exists. It simply acts as though that claim limitation were not there. That is wrongful, but not surprising, since the depositions have revealed that *plaintiff has never made any attempt to ascertain whether or not that limitation was to be found in the accused valve. They never made any measurements at all in that regard, not before charging infringement, not before bringing the suit, and not before making their motion for summary judgment.*

In point of fact, and as is brought out in the accompanying affidavit of Ronald J. Weiss, this particular limitation is not to be found in the accused valve. The flow rate into the upper chamber is not significantly effected by the relative sizes of the back pressure chamber inlet and outlet ...

Defendant's Brief at 16 (emphasis in original; footnote omitted). The Weiss affidavit reports the results of caliper measurements on defendant's valves that show the annulus to be equal to or greater than the bleed tube in cross-sectional area. Indeed, the Weiss affidavit avers that, based on Richdel's own blueprints and manufacturing tolerances, it is possible that some of plaintiff's valves have greater "annular passage" cross-sectional areas than bleed tube cross-sectional areas—thereby, in defendant's view, not even meeting the specifications of plaintiff's own patent.[7]

Unfortunately for defendant, the truth is not that plaintiff has ignored a limitation of the patent claim, but rather that defendant has read into the claim a limitation that is not there. The patent requires that, when the valve is open, the rate of *flow* through the annular passage be less than the rate of flow out the bleed tube. The patent does not require that the annulus be smaller than the bleed tube in cross-sectional *area*, despite defendant's contrary and blustery insistence in its papers.[8]

The declaration of Myrl Saarem, one of the named inventors of the patent in suit and a vice-president of plaintiff, explains that the flow condition described in the patent *must* exist in order for the valve to operate properly. This assertion is undisputed. It is likewise undisputed that both plaintiff's and defendant's valves work in this manner. To be sure, the relative rates of flow through two passages may be manipulated by altering the relative sizes of the passages, as well as by other means. For example, defendant asserts that in its valves, a Venturi effect operating in the valve outlet increases the rate of flow down the bleed tube.[9] Plaintiff does not dispute this contention, nor deny that the same force could be operating in the substantially identical outlet of its own valves.

Thus, the patent in suit specifies a relationship between two rates of flow, without specifying whether the relationship is to be achieved by use of passage sizes, Venturi effects, or some combination of factors. The uncontested facts reveal that defendant's valve achieves the specified flow in a product of (for these purposes) identical design.[10] The patent is infringed. *See*

7. There appear to be errors in ¶ 14 of the Weiss affidavit, but they do not materially affect the conclusion Mr. Weiss seeks to draw about the relative sizes of the two passageways.

8. Defendant appears to rely in part on the patent's recitation of an "annular" passage, *see* Defendant's Reply Brief at 2. But "annular" simply means ring-shaped, without limitation of the area of the ring relative to its core. *E.g.,* Webster's Third New International Dictionary 88 (1971).

9. A Venturi effect is the drop in pressure of a fluid that is observed when the fluid flows through a constricted tube.

10. Presumably, any Richdel valve that has an annular passage area larger than the bleed tube cross-section would achieve the specified flow relationship by a combination of factors. However, even if (hypothetically) the valve's inventor did not fully understand the physical principles that generate the desired result, the patentee is entitled to protection. *See, e.g., Smith v. Carter Carburetor Corp.,* 130 F.2d 555 (3d Cir.1942) (patentee need not understand efficient application of invention); *HC Prods. Co. v. Air Vent, Inc.,* 468 F.Supp. 750 (C.D.Ill.1979).

*Digicourse, Inc. v. AMA Distributors, Inc.,* 629 F.Supp. 1310 (E.D.La.1984) (construction of claim is matter of law; summary judgment of infringement granted on some claims), *aff'd mem.,* 790 F.2d 93 (Fed. Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 82, 93 L.Ed.2d 36 (1986).

### CONCLUSION

The material facts relating to plaintiff's claim for patent infringement are undisputed, although the parties urge that different legal conclusions be drawn from them. These facts compel the conclusion that plaintiff's patent is valid, enforceable, and infringed by defendant. Plaintiff's motion for summary judgment on the first claim for relief stated in the complaint is GRANTED. Defendant's cross motion for judgment of non-infringement is DENIED.

In accordance with this judgment, it is ORDERED that defendant Aqua–Trol Corporation is permanently enjoined from any further infringement of U.S. Patent 4,505,-450 under the provisions of 35 U.S.C. § 283.

In view of this disposition, plaintiff's motion for a preliminary injunction is DENIED as moot.

SO ORDERED.

APPENDIX I