**SIMMONS FASTENER
CORPORATION,
Plaintiff,**

v.

**ILLINOIS TOOL WORKS,
INC., Defendant.**

No. 86–CV–280.

United States District Court,
N.D. New York.

June 24, 1987.

Wyatt Gerber Shoup Scobey & Badie (Eliot S. Gerber, of counsel), New York City, Kohn Bookstein & Karp (Richard A. Kohn, of counsel), Albany, N.Y., for plaintiff.

Cook Wetzel & Egan, (Granger W. Cook, of counsel), Chicago, Ill., Bouck Holloway Kiernan & Casey (Francis Holloway, of counsel), Albany, N.Y., for defendant.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

This action involves allegations of patent infringement made by defendant Illinois Tool Works, Inc. (ITW) against plaintiff Simmons Fastener Corporation (Simmons). The object of the allegations is a small metal device alternately known as a fastener, nut plate, or screw anchor (fastener) that is used primarily in securing shelves inside of refrigerators by serving as an anchor for a screw.

■ ITW has made such a fastener for a number of years, and that fastener is protected by U.S. Patent No. 3,812,476 (the Hoadley patent).[1] In December of 1985, Simmons introduced a fastener that ITW contends infringes the Hoadley patent.[2] Simmons subsequently filed a complaint in this court seeking a declaration that its new fastener does not infringe the Hoadley patent, and ITW in turn filed a complaint instituting a separate action in which it alleges that the new Simmons fastener does in fact infringe the patent. *See* 35 U.S.C. §§ 271, 281.

The separate actions were consolidated by the court, and a bench trial on the issue of liability was held between January 20 and 23, 1987. The court properly has jurisdiction of the matter pursuant to 28 U.S.C. § 1338(a) and 28 U.S.C. § 2201(a) and herein sets forth its findings of fact and conclusions of law in accordance with Fed.R. Civ.P. 52(a).

### Factual Findings

Although ITW contends that the Simmons fastener infringes several claims of the Hoadley patent, the court's attention during trial was directed primarily to Claim 1 of the patent, which provides:

---

[1]. Previously, the parties were involved in litigation in this court regarding the validity of the Hoadley patent. The court held that the patent was invalid due to obviousness, but the judgment was reversed and the case remanded by the United States Court of Appeals for the Federal Circuit. *Simmons Fastener Corporation v. Illinois Tool Works, Inc.,* 560 F.Supp. 1277 (N.D. N.Y.1983) (McCurn, J.), *rev'd,* 739 F.2d 1573 (Fed.Cir.1984). Before any further proceedings were held in this court, the parties agreed to a judgment order holding the patent valid, enforceable, and infringed by an earlier fastener made by Simmons.

[2]. The court notes that, since the time of trial, a patent has issued on the Simmons fastener. This action by the Patent Office is not dispositive of the issues before the court. The issuance of the patent to Simmons raises a presumption of a patentable difference between the Simmons and ITW devices. It does not raise a presumption of non-infringement. *Atlas Powder Co. v. E.I. Du Pont de Nemours,* 750 F.2d 1569, 1581 (Fed.Cir.1984); *Freeman v. Altvater,* 66 F.2d 506, 512 (8th Cir.1933).

1.  A screw anchoring device for pre-assembled aperture sealing attachment with an apertured panel to confine material, such as insulating material foamed in place between the panel and attached spaced wall or other structure; and comprising a plate member having a central aperture forming a helical screw receiving impression and a generally flat portion, a pair of upstanding tabs projecting from one face of the generally flat portion of said plate member at opposite sides of and adjacent to said screw impression, said tabs being struck from within the margins of said plate member, and a continuous pad of a material capable of being penetrated by said screw and having an exposable adhesive surface substantially covering and carried by the plate member, with the tabs projecting for entry into the panel aperture and through said pad to locate the anchoring device and with the adhesive surface of the pad extending across the panel aperture for mounting and sealing adherence to the adjacent panel surface whereby to prevent egress of trapped material through the panel aperture, and with the screw impression in position for threaded engagement with a screw passed through the panel aperture and the pad for attachment of a utility component to the opposite panel surface, and one or more wing portions formed from said plate member at one or more edges of said flat portion of said plate member, said wing portions being angled away from the face thereof opposite to that of the tabs, and adapted to be embedded in the foamed material for supplementing the other anti-rotative features of the anchor.

ITW's position is that the fastener infringes the claim literally and under the doctrine of equivalents. The court will compare the Simmons fastener to the elements of the claim itself and then determine whether there is infringement, either literal or under the doctrine of equivalents. As an aid in this discussion, the ITW and Simmons fasteners appear as follows:

ITW-HOADLEY

SIMMONS FASTENER

## (A) *Wing Portion*

The first issue that the court will address is whether the Simmons fastener has one or more wing portions used for supplementing the other anti-rotative features of the fastener. ITW maintains that the small piece on the Simmons fastener that connects the two larger pieces, called by Simmons the leaf and the plate, is a wing portion. Simmons, who appropriately enough refers to this small center piece as the connector, argues that it is not a wing portion because (1) it does not have a free edge and (2) it does not have the same function as the wing portion on the ITW fastener.

The court agrees with the arguments of Simmons. First, under any reasonable definition of the term, a wing must have a free edge. The wings on the ITW fastener do in fact have free edges, and although the physical embodiment of the patent is not controlling, the wings on the ITW fastener do serve to illustrate what typically is referred to as a wing.

Second, the connector on the Simmons fastener does not have the same function as the wings on the ITW device. A great deal of energy was expended by both sides on the question of whether the Simmons connector supplements the other anti-rotative features of the fastener.

In order to address the question of rotation, it is useful to briefly set forth how the fasteners are used in refrigerator assembly. Most modern refrigerators have an outer shell and an inner liner. The space between the shell and the liner is normally filled with some sort of insulating material, usually foam, that helps prevent cold from escaping the refrigerator. Shelves are attached to the inside of a refrigerator's storage area by screws. The screws go through openings on the shelves and protrude outward through the liner into the space between the liner and the outer shell. Fasteners, such as those under discussion in this case, are used to receive and anchor the screws when they go through the liner so that the screws can be tightened. The fasteners are thus located in the space between the shell and the liner and are therefore surrounded by the insulating foam.

ITW asserted during trial that when shelves are being attached to a refrigerator, there is sometimes a problem with what ITW calls "spinners." The spinner problem to which ITW referred allegedly occurs when a screw is too large for the screw impression in the fastener and the screw then jams in the screw impression, forcing the fastener to spin with the screw when the screw is turned. ITW maintains that anti-rotative features of a fastener, such as wings, will prevent the fastener from spinning in the foam. The fastener will hold tight, and the screw, despite its improper size, can be forced through the screw impression and properly tighten in the fastener.

Notwithstanding ITW's evidence on "spinners," the court heard little, if any, testimony that this type of spinning occurs in the real world of refrigerator assembly. ITW's own witnesses could not state that they had ever observed such spinning.

ITW directed the court's attention to a test that it performed that it contends establishes that the connector on the Simmons fastener helps prevent the fastener from rotating in the foam insulation. ITW took a number of Simmons fasteners and soldered screws in them. It then removed the connector portions from half of the fasteners and applied wax to the exposed surfaces on all of the fasteners so as to isolate the connector as a factor in preventing rotation. The fasteners were then embedded in foam insulation, and once the foam cured, a rotation force was applied to each fastener by way of the soldered screw to determine if and how much each fastener would rotate. The result of the test was that Simmons fasteners without connectors rotated more in the foam than those with connectors, thus presumably proving ITW's point that the Simmons connector serves to prevent the fastener from rotating.

Simmons also introduced evidence on "spinners," but spinners of a different type. Simmons called two witnesses who work for a major refrigerator manufactur-

er in Michigan that now uses Simmons fasteners. Neither of these witnesses had ever seen or heard of the type of spinning on which ITW presented evidence. Rather, they testified that in the past, on occasion, when shelves were being installed in refrigerators, the electrically powered screw guns that are used to screw the shelves into place were sometimes set with too much torque and would strip the screw impression in a fastener. When such stripping occurred, the screw would spin freely in the screw impression, but the fastener itself would not spin. However, since using Simmons fasteners, this type of spinning has not been a problem.

Simmons performed its own tests to determine if the connector on its fastener helps prevent the fastener from rotating. Simmons, like ITW, used fasteners with and without the connector. However, there were some differences between the Simmons and the ITW tests. Simmons contended at trial that the foam used in the ITW test, which Simmons inspected, was not as dense as the foam normally used in refrigerator construction. While ITW disputes this contention, Simmons used a denser foam that it maintains is of the type mormally used in the industry. Further, Simmons did not wax the non-connector surfaces of the fasteners, as such wax is never used in the actual assembly of refrigerators.

In Simmons's first test, a screw gun was set at fifteen inch pounds of torque, and no fastener, with or without the connector, rotated. In the second test, a very powerful torque wrench was used, and it applied a much higher torque load. Again, there was no rotation, as the screw impressions collapsed on all of the fasteners before there was any rotation of the fasteners themselves.

These test results are in accord with Simmons's argument that it would be all but impossible for the fastener to rotate. Simmons argues, and its tests demonstrate, that a fastener is mounted firmly against the liner wall, and tightly embedded in the foam, after only several screw rotations. Furthermore, Simmons asserts, and con-

vincingly so, that an oversized screw would not jam in the screw impression since it would not pass through the conical opening that the screw enters before reaching the screw impression itself. The conical opening is not threaded, and the screw would not jam in it. It would merely push the fastener straight out from the liner wall, but there would be no rotation.

The court finds Simmons's evidence regarding the anti-rotative effect of the connector substantially more convincing than that presented by ITW. It appears to the court that the type of spinning described by ITW just does not occur in the real world so that the connector is a non-existent solution, or partial solution, to a nonexistent problem. As for the type of spinning that has occurred, where a screw spins freely in the screw impression, as mentioned previously, the Simmons fastener apparently solves this problem. However, if such spinning still did occur, it would in no way be prevented or lessened by the connector. The court therefore finds that the Simmons connector does not add anything to any other anti-rotative features that the fastener may have.

The court also heard testimony on whether the connector is used as a grip by the persons who install the shelves in the refrigerators. Although no mention is made in Claim 1 of the Hoadley patent regarding use of the wing portion as a grip, such use is mentioned in the patent specification. Even if it is not directly pertinent to the question of literal infringement, it is, at the least, pertinent to the question of infringement under the doctrine of equivalents.

Stated simply, the court is convinced that the wings on the ITW fastener are used as an aid in handling while the connector on the Simmons fastener is not. With their free edges, the ITW wings can be easily gripped by a person installing refrigerator shelves. However, as stated, the Simmons connector has no free edge and provides no means by which it can be handled. A person installing the shelves must handle the Simmons fastener at a place other than on the connector.

Furthermore, the Simmons connector performs several functions that the ITW wings do not perform. The connector locates the leaf and its screw impression above the conical opening through which the screw passes. By creating a space between the leaf and the plate, the connector helps create a spring or flexing effect that allows the leaf and plate to clamp together as the screw is tightened. Consequently, it also allows space for the conical opening, which as stated previously, prevents spinning. These features are unique to the Simmons fastener and are not found on the ITW fastener.

ITW asserts that it could have used a more general term than wing portion in its patent, such as "angulated portion." The fact remains, though, that it did not, and it cannot now argue that it means something other than what is in the patent. The Simmons connector is not a wing portion in physical embodiment, and it does not perform the functions of a wing as set forth by ITW. The court thus finds that the Simmons connector is not a wing portion within the meaning of the Hoadley patent.

### (B) *Plate Member*

A second key issue that the court must address is whether the Simmons fastener is a single plate member with a central aperture that forms a helical screw receiving impression. First, the court will concern itself with whether the entire "U"-shaped Simmons fastener is a single plate member, as argued by ITW. ITW is compelled to make this argument because Claim 1 of its patent requires a screw receiving impression on the plate member. If, as Simmons contends, the screw impression is on the leaf, which is distinct from the plate member, there is no literal infringement as to this element.

It is undisputed, based on evidence presented by both sides, that the purpose of the plate member is to distribute load to the liner wall. ITW maintains that the entire Simmons fastener is a plate member and distributes load. Its argument is based primarily on a finding by this court in the earlier litigation between these parties.

In the earlier case, the court addressed a device known as the Knowlton fastener, a diagram of which follows:

KNOWLTON

In its opinion, the court stated that "Knowlton exhibits a single plate, folded into two layers." *Simmons Fastener Corp. v. Illinois Tool Works, Inc.*, 560 F.Supp. 1277, 1284 (N.D.N.Y.1983), *rev'd*, 739 F.2d 1573 (Fed.Cir.1984). ITW has jumped on this language to support its argument that the Simmons fastener, which is also folded over, is a single plate.

However, to adopt ITW's argument would be to conclude that the Simmons and

Knowlton fasteners are very similar when indeed they are not. Strictly speaking, each fastener is a single piece of metal, but the similarity ends there. The Simmons fastener has a space between its upper and lower portions, and each portion performs different functions. The plate is flush against the liner wall, distributes load to the wall, and contains the conical opening for the screw. The leaf contains the actual screw impression and clamps down toward the plate when the screw is tightened.

In Knowlton, the two parts of the plate are flush against one another and work together to perform the same function, to distribute load to the liner wall. The Knowlton fastener, like the ITW fastener, is basically flat, a characteristic in accord with the standard definition of "plate." The Knowlton and ITW fasteners act as a single plate. The Simmons fastener, with its screw impression on the leaf, which is not responsible for distributing load, is not a single plate. It is a leaf attached to a plate by a connector, and each element has a different purpose.

However, even if the court were to assume that the Simmons fastener were a plate, there would be no literal infringement of Claim 1 of the patent for two other reasons. First, a strong argument can be made, at least, that if the entire fastener is a plate, then the central aperture is the hole in the connector, not the screw impression in the leaf. The hole in the connector, though, is not a screw impression. Because Claim 1 of the patent requires that the central aperture form a helical screw impression, there is no literal infringement as to this element.[3]

Second, Claim 1 also requires that the plate member be substantially covered by a continuous pad having an exposable adhesive surface. The plate in the Simmons fastener, as defined by Simmons, is substantially covered by such a pad. However, if the entire Simmons fastener is a

plate, as maintained by ITW, then the plate is not substantially covered by the adhesive pad.

Outside of its wings, the entire outer surface of the ITW fastener is covered by an adhesive pad. The covered surface comprises approximately eighty-five percent of the total outer surface area of the ITW fastener. While the court is not prepared to set down an arbitrary percentage of total surface area coverage that would be "substantial," it is prepared to find that the amount of surface area covered by the adhesive pad in the Simmons fastener, less than half of that area, is not substantial. Therefore, while the court finds that the entire Simmons fastener is not a plate member, it also finds that, even if it were, it does not have a central aperture forming a helical screw impression and is not substantially covered by an adhesive pad.

### (C) *Tab Position*

Claim 1 of the Hoadley patent calls for "a pair of upstanding tabs projecting from one face of the generally flat portion of said plate member at opposite sides of and adjacent to said screw impression ..." The ITW fastener has two metal tabs that are on the same plane as the screw impression and are at opposite sides of and adjacent to the screw impression.

The Simmons fastener presents a different arrangement. The screw impression is on the leaf, which the court has already found is distinct from the plate. The Simmons fastener does have upstanding tabs, but three, not two of them, and they are adjacent to the conical opening on the plate. They are therefore on a different plane than the screw impression.

Not surprisingly, ITW asserts that the tabs need not be on the same plane as the screw impression in order to be on the sides of and adjacent to the screw impression. The court cannot accept this assertion, which at its best stretches beyond credibility any reasonable definition of the

---

**3.** In its decision issued in 1983, the court did recognize that the screw impression on the Knowlton fastener, which is similarly situated to the screw impression on the Simmons fastener, is centrally located. The Knowlton fastener has no other opening. While not completely abandoning its position from the earlier case,

the existence of the opening on the connector in the Simmons fastener, which has no parallel on Knowlton, does lead the court to conclude that a strong argument can be made that, if the entire Simmons fastener is considered a plate, the opening on the connector is the central aperture.

terms "adjacent" and "at opposite sides of."

A reasonable definition of "adjacent" includes the concept of abutting, touching, or at the least, next to or adjoining. Under no circumstances can the court find that the tabs on the Simmons fastener are adjacent to the screw impression. They are on a totally different plane and are below the screw impression.

Similarly, Simmons argues that the tabs on its fastener are not on the sides of the screw impression. Simmons does not raise any distinction with regard to whether its tabs are on *opposite* sides of the screw impression, since its fastener has three tabs rather than the two found on the ITW device. It solely maintains that its tabs are not on the sides of the screw impression because they are on a different plane.

As in the case of adjacency, ITW again argues that the tabs need not be on the same plane as the screw impression in order to be on the sides of the screw impression. ITW's position is premised on the notion that the tabs on the Simmons fastener are on the sides of an imaginary axis that runs from the screw impression on the leaf through the conical opening on the plate.

The court agrees with ITW that the Simmons tabs are on the sides of the imaginary axis, but that does not correlate into a finding that the tabs are on the sides of the screw impression. As stated regarding adjacency, the tabs are on the same plane as the conical opening and are on the sides of that opening. They are not on the sides of the screw impression, which is on a plane separate and distinct from that on which the tabs are located.

*Legal Conclusions*

*(A) Literal Infringement*

■ "Literal infringement requires that the accused device embody every element of the claim as properly interpreted." *Texas Instruments v. U.S. International Trade Commission*, 805 F.2d 1558, 1562 (Fed.Cir.1986); *Mannesmann Demag Corporation v. Engineered Metal Products Co., Inc.*, 793 F.2d 1279, 1282 (Fed.Cir. 1986). However, a product cannot escape a finding of infringement merely because it has added elements or functions to the patented device if it has adopted the main features of the device. *See Amstar Corporation v. Envirotech Corporation*, 730 F.2d 1476, 1482 (Fed.Cir.1984). The party attempting to establish infringement must do so by a preponderance of the evidence. *Mannesmann*, 793 F.2d at 1282.

■ As discussed, the Simmons fastener does not have a wing portion. The entire fastener is not a plate member, and even if it were, it does not have a central aperture forming a helical screw impression nor is it substantially covered by an adhesive pad. Moreover, the fastener does not have tabs at the sides of and adjacent to the screw impression. The Simmons fastener has not merely added features to the device set forth in the Hoadley patent. It contains several significantly different features that take it clearly out of the realm of literal infringement. Therefore, the court concludes that the Simmons fastener does not literally infringe the Hoadley patent.

*(B) Infringement Under the Doctrine of Equivalents*

ITW maintains that, even if the Simmons fastener does not literally infringe the Hoadley patent, it still infringes the patent under the doctrine of equivalents. That doctrine has its most modern pronouncement in the case of *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). Even if there is no literal infringement of a patent, infringement may still be found if the alleged infringing device "performs substantially the same function in substantially the same way to obtain the same result" as the patented device. *Id.* at 608, 70 S.Ct. at 856; *Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147 (1929).

■ As discussed in the court's 1983 opinion in the earlier litigation between these parties, the Hoadley patent itself borrows from several other patents. It thus cannot be termed a pioneer invention and is not entitled to a broad range of equivalents. *Thomas & Betts Corporation v. Litton Systems, Inc.*, 720 F.2d 1572, 1580 (Fed.Cir.1983).

■ Simmons interprets the doctrine of equivalents to require a determination as to whether a particular element of the accused device is equivalent to an element in the claim of the patented device. The court concludes, however, that the doctrine of equivalents deals with "equivalency to the claimed invention as a whole." *Texas Instruments*, 805 F.2d at 1571. Certainly, a finding in some instances that the crucial elements of an alleged infringing device are not equivalent to elements in the claim or claims of the patented device will lead to the conclusion that there is no infringement under the doctrine of equivalents. Such a result is logical, since if the separate elements perform their functions differently, or reach a different result, then it is likely that the device as a whole will perform its function differently or reach a different result.

The court can envision instances, though, where one or a number of elements of an alleged infringing device are not equivalent to elements in the claim or claims of a patented device, and a conclusion of infringement under the doctrine of equivalents can still be made. This result is also logical, because if the elements of the alleged infringing device that are not equivalent to elements in the patent are not crucial to how the device performs, or the result that it obtains, then the device as a whole could still perform substantially the same function in substantially the same way to obtain the same result as the patented device. With this understanding of the doctrine of equivalents in hand, the court will now determine whether it can be invoked to reach the conclusion that the Simmons fastener infringes the Hoadley patent.[4]

■ Several of the elements of the Simmons fastener addressed by the court are crucial to how the device as a whole operates. The court has already found that the connector on the Simmons fastener is not a wing portion. It does not perform the same function as the wing portion set forth in Claim 1 of the patent in that it does not supplement any anti-rotative features of the fastener. Further, in determining infringement, the court may properly consider the specification of the patent; *id.* at 1568; and the specification states that the wing portion serves as a convenient grip. The Simmons connector does not serve as a grip.

The entire Simmons fastener is not a plate, and it performs differently than the plate portion of the ITW fastener, whose purpose is to distribute load to the liner wall. The Simmons fastener does have a plate portion that distributes load, but it also has a connector that aligns a leaf section above the plate, and the leaf clamps down toward the plate when the screw is tightened in the fastener. This effect allows the Simmons fastener to accept far greater torque than the ITW device and prevents the type of spinning that occurs when the screw impression is stripped. Additionally, the conical opening in the plate prevents an oversized screw from ever getting jammed in the screw impression, thus also preventing the spinning of fasteners that ITW alleges is a real problem.

When the Simmons fastener is examined as a whole and compared to Claim 1 of the Hoadley patent, the court concludes that there is no infringement under the doctrine of equivalents. Even if the court were to conclude, in the broadest possible sense, that the Simmons fastener performs substantially the same function to achieve the same result, it cannot conclude that each device obtains that result in the same way. Both of the fasteners, as well as several others, perform the function of anchoring a screw inside a refrigerator.

However, the Simmons fastener, while having some things in common with the

---

**4.** In regard to the question of infringement under the doctrine of equivalents, each side makes several estoppel arguments stemming from the prosecution history of the patent, including the prior litigation. Simmons contends that ITW is attempting to resurrect an overly broad scope of its claim that was disallowed by the Patent Office and that ITW has switched its position on several issues since the earlier litigation. For its part, ITW contends that Simmons has switched its position on certain issues since the earlier litigation, a charge that Simmons denies. The court deems it unnecessary to enter this particular fray in order to resolve the main issues confronting it.

706

ITW device, is not a mere modification of that device. It presents a significant change in the way that it performs its function. Accordingly, it does not infringe the Hoadley patent, either literally or under the doctrine of equivalents. Judgment is hereby granted in favor of Simmons.

IT IS SO ORDERED.