**EAGLE COMTRONICS, INC., Plaintiff,**

v.

**NORTHEAST FILTER CO., INC. and Timothy M. Holdsworth, Defendants.**

**No. 90–CV–573.**

United States District Court, N.D. New York.

March 12, 1993.

Scolaro Shulman Cohen Lawler & Burstein, Syracuse, NY (Walter D. Kogut, of counsel), Parkhurst Wendel & Rossi, Arlington, VA (Roger W. Parkhurst, of counsel), for plaintiff.

Richard C. Conover, Bozeman, MT, for defendants.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### INTRODUCTION

Plaintiff, Eagle Comtronics ("Eagle"), commenced this suit in May 1990, seeking damages from Northeast Filter Co., Inc. ("Northeast") and Timothy M. Holdsworth ("Holdsworth") resulting from their alleged infringement of Eagle's '803 patent. On November 21, 1991, this court issued a memorandum-decision and order ("November 21st Order") that granted plaintiff's motion for partial summary judgment as to all of defendants' affirmative defenses and counterclaims based upon patent invalidity, laches, and equitable estoppel. *See Eagle Comtronics, Inc. v. Northeast Filter Co.,* 22 U.S.P.Q.2d 1134,

1991 WL 247551, 1991 U.S.Dist. LEXIS 16965 (N.D.N.Y. Nov. 21, 1991). As a result of this order, a number of paragraphs were struck from defendants' answers and amended answers pursuant to Fed.R.Civ.P. 12(f). *See id.* In this same order, the court denied defendants' cross-motion for summary judgment on the issue of patent invalidity based upon the court's conclusion that the doctrine of assignor estoppel prevented defendants from raising such claims in response to this litigation. *See id.*

The court now has before it the parties' cross-motions for partial summary judgment pursuant to Fed.R.Civ.P. 56. By way of its motion, Eagle seeks to have this court find that both defendants infringed claim 17 of its '803 patent by manufacturing and selling the "Permatrap" filter in the United States. In addition, Eagle seeks to have this court conclude that such infringement was willful. Finally, Eagle asks this court to declare this case exceptional and award Eagle reasonable attorney fees pursuant to 35 U.S.C. § 285.

Defendants, likewise, move for partial summary judgment. They seek to have this court declare that they have not infringed Eagle's '803 patent. They also request that this court denominate this case exceptional and award them reasonable attorney fees pursuant to 35 U.S.C. § 285. Finally, they seek to have this court impose sanctions upon plaintiff's attorney pursuant to Fed. R.Civ.P. 11. The court will discuss each of these motions in turn.

### DISCUSSION [1]

#### I. Summary Judgment Standard

As this court stated in its November 21st Order, "[s]ummary judgment is appropriate where 'there is no genuine issue as to any material fact' and 'the moving party is entitled to a judgment as a matter of law.' " *Eagle Comtronics,* 1991 WL 247551 at *1, 1991 U.S.Dist. LEXIS 16965 at * 4–5 (quoting *Shamrock Technologies, Inc. v. Medical Sterilization, Inc.,* 903 F.2d 789, 791, 14 U.S.P.Q.2d 1728, 1730 (Fed.Cir.1990) (citing in turn Fed.R.Civ.P. 56(c); *see also Celotex*

---

1. For a complete recitation of the facts that underlie this case refer to this court's November 21st Order. *Eagle Comtronics,* 1991 WL 247551, 1991 U.S.Dist. LEXIS 16965.

*Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986)). Moreover, the Federal Circuit has held that if these prerequisites are satisfied, "[s]ummary judgment is as appropriate in a patent case as in any other." *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.,* 853 F.2d 1557, 1561 (Fed.Cir.1988) (citations omitted). The mere existence of some alleged factual dispute, however, will not defeat such a motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). Rather, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"), there must be no *genuine* issue of *material* fact. *Id.* at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211 (emphasis in the original). For purposes of this rule, material facts are defined as those which might affect the outcome of the suit under the governing law. *Id.* In patent cases, the Federal Circuit is the source of the case law which governs this court's analysis. *See Atari, Inc. v. JS & A Group, Inc.,* 747 F.2d 1422, 1439, 223 U.S.P.Q. 1074, 1087 (Fed.Cir.1984).

■ In deciding whether to grant summary judgment, the court's function is to determine whether there is a genuine issue for trial, not to weigh the evidence and determine the truth of the matter. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511, 91 L.Ed.2d at 212. Accordingly, the court must leave credibility determinations, weighing of evidence and drawing of legitimate inferences from the facts to the jury. *Id.* at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216. The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2558, 91 L.Ed.2d at 274.

■ Once the moving party has met this burden, the burden shifts to the non-movant

to demonstrate that there is a genuine issue of material fact. Although the court must draw all inferences in favor of the non-movant, the non-movant must do more "[t]han simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986). "Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact." *Greenblatt v. Prescription Plan Servs. Corp.,* 783 F.Supp. 814, 819–20 (S.D.N.Y.1992) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510 (interpreting the "genuineness" requirement)); *see also Shamrock Technologies,* 903 F.2d at 792–93, 14 U.S.P.Q.2d at 1731. Rather, to meet its burden, the non-movant must present affirmative evidence from which a jury *might* return a verdict in its favor. *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514, 91 L.Ed.2d at 217 (emphasis added); *see also Greenblatt,* 783 F.Supp. at 819–20. Nevertheless, although the non-movant is expected to set forth specific facts showing that there is a genuine issue for trial, such evidence need not *ensure* that the jury will return a verdict in its favor. *See Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514, 91 L.Ed.2d at 217. With these guidelines in mind, the court must determine whether either of the parties is entitled to the relief they seek.

## II. Plaintiff's Motion for Summary Judgment [2]

Pursuant to 35 U.S.C. § 271(a) "[w]hoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a) (West 1984). There is no dispute in this case that Northeast and Holdsworth made and sold the Permatrap filter in the United States. Thus, for purposes of this motion, the only question the court must resolve is whether defendants' Permatrap filter literally infringes Eagle's '803 patent.

---

**2.** For purposes of this motion, plaintiff addresses only the issue of literal infringement. Plaintiff, however, specifically reserves its right "[t]o assert, at any trial of this case, its right to prove infringement via the doctrine of equivalents." *See* Plaintiff's Reply Memorandum of Law at 2 n. 1.

Eagle applied for and received its '803 patent for an invention entitled "Split Tuning Filter." According to the patent, this filter is "[p]articularly suitable for use in: (1) removing one or more single or multiple frequency scrambling signals injected into a TV channel to eliminate the possibility of intelligible reception of video and/or audio information; or (2) removing a video carrier in a TV channel to prevent its reception." *See* Defendants' Exhibit CC at 011. Eagle contends that defendants' Permatrap filter literally infringes claim 17 of this patent.[3]

"Literal infringement requires that every limitation of the patent claim must be found in the accused device." *Richdel Div. of Garden Am. Corp. v. Aqua–Trol Corp.*, 681 F.Supp. 141 (E.D.N.Y.1988), *aff'd*, 871 F.2d 1097, 10 U.S.P.Q.2d 1959 (Fed.Cir.1989) (quoting *Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 837 F.2d 1044, 1054 (Fed.Cir.1988)). The burden is on the patent owner to prove literal infringement by a preponderance of the evidence. *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 889 (Fed.Cir.1988). Determination of whether a patent claim has been literally infringed involves a two step analysis. *Hormone Research Found., Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1562, 15 U.S.P.Q.2d 1039, 1042 (Fed.Cir.1990) (citing *ZMI v. Cardiac Resuscitation Corp.*, 844 F.2d 1576, 1578, 6 U.S.P.Q.2d 1557, 1559 (Fed.Cir.1988)). First, the court must define the claim, a legal question of claim interpretation. *SmithKline Diagnostics, Inc. v. Helena Lab.*, 859 F.2d at 889. Second, the court must determine whether each limitation of the properly construed claim is found in the accused product, a question of fact. *Id.* at 889; *see also Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*, 868 F.2d 1251, 1258, 9 U.S.P.Q.2d 1962, 1967 (Fed.Cir.1989). A product cannot escape a finding of infringement, however, merely because it has added elements or functions to the patented device if it has adopted the main features of that device. *Simmons Fastner Corp. v. Illinois Tool Works Inc.*, 663 F.Supp. 697 (N.D.N.Y. 1987) (citing *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1482 (Fed.Cir.1984)); *see also Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 945 (Fed.Cir.), *cert. denied*, 498 U.S. 920, 111 S.Ct. 296, 112 L.Ed.2d 250 (1990). The court will discuss each prong of this two-part test *seriatim*.

## A. Claim Interpretation

At issue in this case is the language of the fourth element of claim 17. This element provides for "[ (4) ] a *pair* of *signal isolation shields spaced apart a predetermined amount* and *defining opposite sides of said isolation area*, each said shield extending perpendicularly at least above a component mounting surface of said circuit board." *See* Defendants' Exhibit CC at 014 (emphasis added). To ascertain the meaning of a patent claim, the court *must* begin with the language of the claim itself. *SmithKline Diagnostics*, 859 F.2d at 882 (emphasis added); *see also Stiftung v. Renishaw PLC*, 945 F.2d 1173, 20 U.S.P.Q.2d 1094 (Fed.Cir. 1991); *Syntex Pharmaceuticals Int'l, Ltd. v. K–Line Pharmaceuticals, Ltd.*, 721 F.Supp.

---

**3.** Claim 17 provides that

> An electrical signal filter comprising:
> [(1)] a component circuit board for mounting and electrically interconnecting electrical filter components on at least one of an upper and lower surface thereof;
> [(2)] a first filter section formed by electrical filter components and provided on a first area of said circuit board;
> [(3)] a second filter section formed by electrical filter components and provided on a second area of said circuit board, said first and second filter sections being electrically connected by a conductor passing through an isolation area of said circuit board located between said first and second areas and each of said first and second filter sections including at least a respective primary inductor and a respective resonating capacitor, the respective resonating capacitors of said sections being placed between said primary inductors and being located on opposite sides of said isolation area, each said resonating capacitors including a plate area connected to a respective ground terminal for said first and second filter sections, said plate areas of said resonating capacitors being substantially perpendicular to a line of sight between said primary inductors; and
> [(4)] a pair of signal isolation shields spaced apart a predetermined amount and defining opposite sides of said isolation area, each said shield extending perpendicularly at least above a component mounting surface of said circuit board.

*See* Defendants' Exhibit CC at 014.

653, 660 (D.N.J.1989). Moreover, "[w]ords in a claim 'will be given their ordinary and accustomed meaning, unless it appears that the inventor used them differently.'" *Jonsson v. Stanley Works,* 903 F.2d 812, 820, 14 U.S.P.Q.2d 1863, 1871 (Fed.Cir.1990) (quoting *Envirotech Corp. v. Al George, Inc.,* 730 F.2d 753, 759, 221 U.S.P.Q. 473, 477 (Fed.Cir. 1984) (quoting in turn *Universal Oil Prods. Co. v. Globe Oil & Refining Co.,* 137 F.2d 3, 6, 58 U.S.P.Q. 504, 508 (7th Cir.1943), *aff'd,* 322 U.S. 471, 64 S.Ct. 1110, 88 L.Ed. 1399, 61 U.S.P.Q. 382 (1944))). This is so because a claim provides the metes and bounds of the right which the patent confers upon the patent owner to exclude others from making, using, or selling its protected invention. *Corning Glass Works,* 868 F.2d at 1257 (citations omitted). In this regard, the Federal Circuit has stated that

> [t]he claims of the patent provide the concise formal definition of the invention. They are the numbered paragraphs which "particularly [point] out and distinctly [claim] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112. It is to these wordings that one must look to determine whether there has been infringement. [Footnote omitted]. Courts can neither broaden nor narrow the claims to give the patentee something different than what he set forth. [Footnote omitted]. No matter how great the temptations of fairness or policy making, courts do not rework claims. They only interpret them.

*E.I. DuPont de Nemuours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1433, 7 U.S.P.Q.2d 1129, 1131 (Fed.Cir.), *cert. denied,* 488 U.S. 986, 109 S.Ct. 542, 102 L.Ed.2d 572 (1988) (quoting *Autogiro Co. of America v. United States,* 181 Ct.Cl. 55, 384 F.2d 391, 395–96 (1967)); *see also American Standard Inc. v. Pfizer Inc.,* 722 F.Supp. 86, 14 U.S.P.Q.2d 1673 (D.Del.1989).

To aid it in the interpretation of the language of a claim, however, "[a] court *may* properly look to the patent's specifications, to the prosecution history of the patent, and to the other claims in the patent." *Stiftung,* 945 F.2d at 1175 (emphasis added) (citing *Mannesmann Demag Corp. v. Engineered Metal Prods. Co.,* 793 F.2d 1279, 1282, 230 U.S.P.Q. 45, 46 (Fed.Cir.1986)).

A patent's prosecution history consists of the entire record of proceedings in the Patent and Trademark Office. Thus, it includes all of the express representations made by or on behalf of the applicant to the examiner to induce the patent grant. *See Standard Oil Co. v. American Cyanamid Co.,* 774 F.2d 448, 452, 227 U.S.P.Q. 293, 296 (Fed.Cir.1985). The prosecution history also limits the interpretation of a claim to exclude any interpretation that may have been disclaimed or disavowed during the prosecution of the application in order to obtain allowance of the claim. *See Id.* For example,

> [w]here the patentee in the course of his application in the patent office has, by amendment, cancelled or surrendered claims, those which are allowed are to be read in the light of those abandoned and an abandoned claim cannot be revived and restored to the patent by reading it by construction into the claims which are allowed.

*Schriber–Schroth Co. v. Cleveland Trust Co.,* 311 U.S. 211, 218, 61 S.Ct. 235, 238, 85 L.Ed. 132, 136 (1940); *see also Olsonite Corp. v. Bemis Mfg. Co.,* 610 F.Supp. 1011, 1022 (E.D.Wis.1985) (having argued a narrow construction for the claim before the Patent and Trademark Office, the patentee should not be permitted to argue a broader construction in support of its infringement claim).

"Depending on the nature and purpose of a [claim] amendment, [however,] it may have a limiting effect within a spectrum ranging from great to small to zero." *Richdel Division,* 681 F.Supp. at 147 (quoting *Hughes Aircraft Co. v. United States,* 717 F.2d 1351, 1362 (Fed.Cir.1983)). Moreover, it is a well-established rule of patent law that "[w]here some claims are broad and others narrow, the narrow claim limitations cannot be read into the broader whether to avoid invalidity or to escape infringement." *D.M.I., Inc. v. Deere & Co.,* 755 F.2d 1570, 1574, .225 U.S.P.Q. 236, 239 (Fed.Cir.1985) (quoting *Deere & Co. v. International Harvester Co.,* 658 F.2d 1137, 1141, 211 U.S.P.Q. 11, 16 (7th Cir.), *cert. denied,* 454 U.S. 969, 102 S.Ct. 514, 70 L.Ed.2d 386 (1981)).

■ Defendants assert that Eagle's counsel's remarks to the United States Patent Office, *see* Defendants' Memorandum of Law at 4 and Defendants' Exhibit CC at 030–031,[4] demonstrate that the necessity of providing two metallic members in plaintiff's product was to "enable the formation of a filter having independently tuned filter sections on a single circuit board," that is, split tuning. *See* Defendants' Memorandum of Law at 7. Thus, defendants argue that these remarks preclude an apparatus, such as their Permatrap filter, that "[d]oes not require two shields ... because [it] does not require an isolation cavity for split tuning. The PERMATRAP is not split tuned." *See* Defendants' Memorandum of Law at 7 (citing Holdsworth Deposition at 95–96, 87).

Defendants also contend that these remarks to the Patent Office

[e]xcluded any interpretation of claim 17 to cover a single shield as utilized in the PERMATRAP filter. The Examiner rejected claims submitted for examination as being unpatentable over Kruczek ... in view of the De Metrick reference ... The Examiner rejected these claims as being obvious to one skilled in the art because Kruczek disclosed the "use of shielded enclosures about selected components of a frequency selective structure".... Counsel for Eagle in response to this rejection argued these references did not show two spaced apart shield members for providing an isolation area to enable split tuning. Therefore, claim 17 must be interpreted to read as it is stated, namely, "a *pair of signal isolation shields*", that is *two distinct members physically separated by space to define an isolation area.*

*See* Defendants' Memorandum of Law at 7–8 (emphasis added).

In response to defendants' arguments, plaintiff asserts that its counsel's remarks to

4.

REMARKS

Claim 1 has been cancelled without prejudice or disclaimer and rewritten as new claim 16, claims 9, 11 and 12 have been rewritten as new claims 18–20. New claims 17 and 21–26 have been added to further define the invention. Claims 2–8, 10 and 13–26 are presented for reconsideration herein.

In accordance with Applicant's structure as defined by the claims, Applicant provides a tunable filter which has at least first and second independent sections on a circuit board which are independently tunable with respect to one another. The same are separated by an isolation area formed by the spacing of two metallic members which serve to support the circuit board within a housing and form an isolation cavity between the two cavities in which the first and second filter sections are formed. As pointed out repeatedly in the specification, the particular construction of the filter having separated cavities retaining the filter sections and spaced by an isolation cavity, enable the formation of a filter having independently tuned filter sections on a single circuit board. It also allows the filter to obtain a minimum of at least 70 dB attenuation in the form of a coaxial transmission cavity. Each of the filter sections may be independently tuned by the use of a terminal coupled in the isolation area between the filter sections. Additional features relating to the particular arrangement of circuit components and the particular formation of the metallic shields allow the formation of a simplified filter structure over any of those shown in the prior art.

In view of the above, the Examiner's rejection of claims 1–8 and 14, insofar as applicable to the amended claims, as unpatentable over Kruczek in view of De Metrick under 35 USC 103, is respectfully traversed. The Examiner alleges that Kruczek discloses the use of shielded enclosures about selected components of a frequency selective structure. The Examiner then asserts that De Metrick shows the use of providing perpendicular walls on a circuit board to provide shielding between components. The Examiner then concludes that it would only be obvious to use shielding of a type shown by De Metrick in the Kruczek patent to thereby anticipate Applicant's claims.

Contrary to Applicant's contention, the claims as now defined set forth a housing which retains a circuit board and the shielding structures coupled in such a manner as to define first and second filter cavities within the housing and an isolation cavity therebetween. This produces a simplified structure which provides the benefits noted above and which permits easy assembly and construction. In contrast, both Kruczek and De Metrick set forth entirely different configurations of components requiring separate enclosures and complicated interconnections and positioning for terminal connections on circuit boards. In addition, none of the references define the cooperation between the shield and housing to mount and isolate the cavities as now set forth in Applicant's claims. Accordingly, there is no suggestion in Kruczek or De Metrick et al to combine the references in any manner capable of meeting the claims under 35 USC 103 without the improper hindsight use of Applicant's own disclosure.

*See* Defendants' Exhibit CC at 030–031.

the Patent Office have nothing to do with claim 17. In this regard, plaintiff states that "[t]he prosecution history (PX–54) of Eagle's '803 patent shows that issued claim 17 was prosecution claim 20, which was a re-written form of originally filed claim 12." *See* Plaintiff's Reply Memorandum of Law at 8. Furthermore, plaintiff asserts that

[o]riginally filed claim 12 was allowable (PX–54, Bates 36), and thus no further prosecution of that claim was necessary so long as the claim was 're-written in independent form including all the limitations of the base claim and any intervening claims.' (PX–54, Bates 036). Original claim 12 . . . was dependent upon original claim 1, . . . and was written as new claim 20 to include all of the limitations of base claim 1, . . .

*See* Plaintiff's Reply Memorandum of Law at 8.

Finally, plaintiff argues that

[n]one of the arguments made to the U.S. PTO by Eagle's patent attorney were expressly directed to prosecution claim 20 which issued as '803 claim 17. Rather, the remarks of Eagle's patent attorney were directed to traversing the rejection of originally filed claims 1–8 and 14, insofar as that rejection might have been applicable to those claims as amended.

*See* Plaintiff's Reply Memorandum of Law at 9.

The court has reviewed the actual language of claim 17, the prosecution history of the '803 patent, the patent specification and the other claims of this patent as well as the parties' proffered interpretation of each of these items. In light of all of this evidence, the court concludes that, as a matter of law, claim 17 requires: (1) a pair of signal isolation shields which (2) must be spaced apart a predetermined distance, (3) define opposite sides of an isolation area, and (4) extend perpendicular at least above a component mounting surface of a circuit board. Furthermore, the court concludes that neither the language of claim 17 itself nor its prosecution history requires that the pair of isolation shields be physically distinct and unconnected or that the isolation area between the two shields be empty.

**B. Is Every Limitation of Claim 17 Found in the Permatrap Filter**

 Having interpreted claim 17, the court's next task is to determine whether every limitation of claim 17 is found in defendants' Permatrap filter. *See SmithKline Diagnostics,* 859 F.2d at 889. Thus, the pertinent question is whether the "brass plug" in the Permatrap filter constitutes a "single isolation shield" as defendants contend or whether this plug merely serves as an additional element that fills the isolation space between the two isolation shields that are situated at either end of the plug as plaintiff contends.

According to plaintiff's expert, Archer S. Taylor,

[t]he thin surface layer or skin of the end faces (H, H1) of the brass plug in the Northeast/Holdsworth "Permatrap" filter constitute a *pair of isolation shields.* A radio frequency signal is able to penetrate only the thin surface, or skin, of the conductive material. This is well known to radio engineers as the "skin effect." Because of this effect, there is *no practical difference in the isolation provided by two physically separate metallic discs* (as shown in the '803 patent) *and the two end faces of a metal cylinder or plug* (as is present in the Northeast/Holdsworth "Permatrap" filter). . . .

*See* Taylor Declaration dated October 20, 1992, at ¶ 7 (emphasis added).

To the contrary, defendants' expert asserts that "[t]he PERMATRAP filter has only a single brass plug acting as a *single isolation shield* between two filter sections and *not* a pair of isolation shields as required by [claim 17]." *See* Bostick Declaration at ¶ 5 (emphasis added). Further support for defendants' position that the Permatrap filter contains a "single isolation shield" rather than "a pair of isolation shields" is found in Holdsworth's deposition testimony. When asked by plaintiff's counsel "[i]n what ways did you design the Northeast Permatrap filter to avoid infringement of Claim 17 of the '803 patent?" Holdsworth responded "I used *one* plate rather than a *pair* of metallic plates and my

intention was that that would be very far from an infringement on a patent which calls for *two spaced apart* metallic plates. Mine is a continuous plate." *See* Holdsworth Deposition at 63–64 (emphasis added).

In response to Mr. Bostick's opinion, Mr. Taylor replies that "[w]hile it is true that the Northeast/Holdsworth 'Permatrap' filter includes a *single* brass plug, the surface layers or skins of the end faces of that brass plug each act as *one of a pair of isolation shields* (not merely a single isolation shield) ..." *See* Taylor Declaration dated November 16, 1992, at ¶ 3 (emphasis added). Mr. Taylor goes on to explain the underlying reasons for his conclusion:

> The language of claim 17 of Eagle's '803 patent calls for "an isolation area of said circuit board located between said first and second" filter section areas, and later calls for "a pair of signal isolation shields spaced apart a predetermined amount and defining opposite sides of said isolation area." In Eagle's '803 patent, the isolation area is explained to be the area 45 between a pair of shields 47 and 49. See, for example, '803 patent, column 3, lines 43–46. The same type of isolation area is defined by the length between the surface layers or skins of the end faces of the brass plug in the Northeast/Holdsworth "permatrap" filter. The claim language does not say that the pair of shields cannot be connected or cannot be parts of a single integral piece. So long as they function as shields and are spaced apart defining a recognizable area, they meet the literal language of claim 17.

*See* Taylor Declaration dated November 16, 1992 at ¶ 4.

Despite plaintiff's rebuttal, the court concludes that defendants' evidence in support of their position constitutes more than mere speculation and conclusory allegations. Rather, they have presented sufficient affirmative evidence, in the form of an expert opinion and Holdsworth's deposition testimony, from which a jury could conclude that

their Permatrap filter contains a single isolation shield and thus does not literally infringe claim 17 of plaintiff's '803 patent. Therefore, the court concludes that a genuine issue of material fact exists which precludes a grant of summary judgment. Accordingly, the court denies plaintiff's motion for summary judgment on the issue of literal infringement.[5]

### III. Defendants' Cross-motion for Summary Judgment

For the same reasons that it denied plaintiff's motion for summary judgment, the court must, likewise, deny defendants' cross-motion. A genuine issue of material fact exists as to whether defendants' Permatrap filter literally infringes plaintiff's '803 patent. In addition, even if ultimately defendants are found not to be guilty of literal infringement, they may still be found to have infringed the '803 patent pursuant to the doctrine of equivalents. Based upon these conclusions, the court must, likewise, deny defendants' request to designate this case exceptional for purposes of 35 U.S.C. § 285. Finally, the court sees no justification to grant defendants' request to sanction plaintiff's attorney pursuant to Fed.R.Civ.P. 11.

### CONCLUSION

For the reasons stated above, the court denies plaintiff's motion for partial summary judgment on the issues of literal and willful infringement. Likewise, the court denies plaintiff's and defendants' requests to designate this case exceptional for purposes of 35 U.S.C. § 285. Finally, the court denies defendants' cross-motion for partial summary judgment in its entirety as well as their motion to sanction plaintiff's attorney pursuant to Fed.R.Civ.P. 11.

IT IS SO ORDERED.

---

5. Having concluded that a genuine issue of material fact exists that precludes a finding of literal infringement on this summary judgment motion, the court must also deny plaintiff's motion for summary judgment on the issue of willful infringement. Likewise, the court declines, at this time, to designate this an exceptional case within the meaning of 35 U.S.C. § 285.