891 F.Supp. 1340 (1995)
YOUNG DENTAL MANUFACTURING CO., Plaintiff,
v.
Q3 SPECIAL PRODUCTS, INC., David G. Kraenzle and Chris J. Carron, Defendants.
No. 4:93CV2319SNL.
United States District Court, E.D. Missouri, Eastern Division.
July 14, 1995.
*1341 Joseph F. Devereux, Jr., Devereux and Murphy, Clayton, MO, for Young Dental Mfg. Co., Inc.
Rudolph A. Telscher, J. Bennett Clark, Senniger, Powers, Leavitt & Roedel, St. Louis, MO, for Q3 Special Products, Inc., David G. Kraenzle, Chris J. Carron.

MEMORANDUM
LIMBAUGH, District Judge.
Plaintiff has filed this multi-count action alleging that defendants have infringed its patent on a disposable prophy angle (DPA), misappropriated certain confidential proprietary information and trade secrets, engaged in constructive fraud; and that defendant Kraenzle has breached a Proprietary Agreement with the plaintiff. The defendants have counterclaimed challenging the validity of the plaintiff's patent. This matter is before the Court on the defendants' motion for summary judgment on Count I (patent infringement) of the plaintiff's complaint. Responsive pleadings have been filed. This cause of action is set for jury trial on the Court's trial docket of September 11, 1995.
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. *1342 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976).
The following is a brief recitation of facts germane to the resolution of the instant motion. It is by no means a complete factual background of this litigation or the subject matter.
Young Dental is in the business of developing, manufacturing, and selling dental products, including prophylaxis angles and their parts, processes, and materials throughout the United States and overseas. A number of its products and processes, including prophy angles and processes thereof, are patented. On October 20, 1992, U.S. Patent No. 5,156,547 entitled "Disposable Prophylaxis Angle and Method of Assembling" (hereinafter referred to as simply the '547 Patent) was issued to the plaintiff. At all times relevant to this litigation, Young Dental is the owner of record of the '547 Patent.
Defendants Kraenzle and Carron are former employees of Young Dental. On or about March 27, 1992 Kraenzle terminated his employment with plaintiff. On or about May 22, 1992 Carron terminated his employment with plaintiff. On or about July 11, 1992 Kraenzle and Carron officially formed their own business venture known as Q3 Special Products, Inc. Defendant Kraenzle was majority shareholder and president of Q3 Special Products; defendant Carron was a minority shareholder and secretary of Q3 Special Products[1]. A portion of the business of Q3 Special Products is the manufacture, sale, and distribution of dental prophy angles. One such angle developed, manufactured, and sold by Q3 is a disposable prophy angle (hereinafter referred to as the Q3 angle or Q3 DPA). It is this angle which the plaintiff contends infringes upon its '547 Patent.
The single issue raised by the defendants in their summary judgment motion is whether the DPA sold by Q3 has an aperture (i.e. opening) in the front of its head. Defendants contend that its accused angle does not have an aperture in the front of its head as required by the '547 Patent; therefore, no infringement has taken place. Plaintiff counters that the defendants have totally misconstrued the language of its patent, and that the infringing device does have an aperture in front of its head as set forth in the '547 Patent.
The determination of patent infringement requires a two-step analysis. Firstly, the claims of the patent must be construed or interpreted to determine their scope and meaning. Secondly, the interpreted claims are analyzed and compared to the accused device to see whether every limitation of each claim is present in the alleged infringing device exactly or by substantial equivalent. Carroll Touch, Inc. v. Electro Mechanical Systems, Inc., 15 F.3d 1573, 1576-79 (Fed.Cir.1993); Minnesota Min. and Mfg. v. Johnson & Johnson, 976 F.2d 1559, 1565 (Fed.Cir.1992); Charles Greiner & Co. v. Mari-Med Mfg., 962 F.2d. 1031, 1034 (Fed.Cir.1992); Eagle Comtronics, Inc. v. Northeast Filter Co. and Timothy M. Holdsworth, 816 F.Supp. 152, 156 (N.D.N.Y. 1993); Insituform of North America, et. al. v. Midwest Pipeliners, et. al., 780 F.Supp. 479, 483 (S.D.Ohio 1991). Defining the claims is a question of law; i.e., a legal question of claim construction. Determining whether every limitation of each claim is found in the accused device is a question of fact. Carroll Touch, at 1577; Minnesota Min. & Mfg., at 1565; Eagle Comtronics, at 156; Insituform of North America, at 483. "A product cannot escape a finding of infringement, however, merely because it has added elements or functions to the patented *1343 device if it has adopted the main features of that device." Eagle Comtronics, at 156.
In order to ascertain the meaning of the challenged claims, the court must begin with the language of the claim(s) itself. The words of the claim(s) are generally given their ordinary and accustomed meaning, unless it appears from the file history or the specification that the inventor intended a different use. Carroll Touch, at 1577; Eagle Comtronics, at 156; see also, Intellicall, Inc. v. Phonometrics, Inc., 952 F.2d. 1384, 1387 (Fed.Cir.1992). In order to aid in claim(s) construction, the court may define key terms by reference to the specification, the prosecution history, prior art, and other claims. Carroll Touch, at 1577; Minnesota Min. & Mfg., at 1566; Eagle Comtronics, at 156. However, the court must be careful not to read into a claim a limitation appearing elsewhere (such as in the specification) and not in the claim itself. Minnesota Min. & Mfg., at 1567 citing E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co., 849 F.2d. 1430, 1433 (Fed.Cir.1988).
At issue in this summary judgment motion is the language contained in Claims 1, 10, and 12. These three claims read as follows:
CLAIM 1:
A plastic, disposable dental angle comprising: a one-piece body having a sleeve part with an open rear end, a neck part, and a head part including a back adjacent said sleeve and a front, a first axial bore extending through the sleeve and neck part, a second axial bore in the head part, said first and second bores communicating with each other at an intersection and being at an angle with respect to each other, and receiving means at the front of said head part;
a one-piece drive gear including a gear part and a shaft part, said shaft part extending rotatably through said first bore, said gear part extending into said second bore;
said receiving means at the front of said head part being in axial alignment with said first bore and proportioned to permit said drive gear to be inserted through said receiving means shaft first; a driven gear rotatably mounted in said head bore and operatively connected to said drive gear, said driven gear including means for retaining a dental bit; and a cap mounted to said head part, said cap including means for locking said drive gear and said driven gear in said angle.
CLAIM 10:
A disposable dental angle comprising: a one-piece body comprising a sleeve having an axial bore therethrough, a head integral with said body, said head including a back side adjacent said sleeve and a front side spaced from said sleeve, said head having an axial bore therein, said head bore and said sleeve bore being at an angle with respect to each other; and aperture means in said front side of said head for receiving a one-piece drive gear including a gear on a shaft, shaft first, into said sleeve aperture;
a driven gear in said head bore operatively connected to said drive gear; and means for limiting axial movement of said driven gear.
CLAIM 12:
A method of assembling a dental angle including a one-piece hollow body having a hollow head thereon, said head having an aperture at the front of said body centered with respect to said body, said method comprising:
inserting a drive gear which is integral with a drive gear shaft, shaft first, into said body through said aperture in said head;
inserting a driven gear into said head until said driven gear is operatively connected to said gear; and
locking said drive gear and said driven gear in said angle.
Defendants aver that Claims 1, 10, and 12 all require an aperture in front of the head. They claim that a visual examination of the plaintiff's device shows that the aperture lies in front of the head, i.e. has an opening at the front portion of its head through which a drive gear is loaded, then a cap is placed on *1344 top of the head to lock the drive gear in place. In contrast, the defendants assert that their angle has a solid hinged head which swings open to allow internal parts (such as a drive gear) to be loaded directly into the body of the angle and then the hinged head is snapped shut to lock the internal parts in place. Plaintiff, on the other hand, asserts that the patent language clearly denotes a one-piece body with a head part that contains an aperture in front. It contends that the hinged portion of Q3's DPA is actually a part of the head, and that the bore exposed by the swinging open of the hinged portion represents an aperture in the front of the head.
The Court has carefully reviewed the claims language, the file history, the specification, and prior art. Moreover, the Court has carefully scrutinized the submitted drawings and samples of both devices. It is this Court's considered opinion that the claims require the existence of an aperture at the front end of the head part of the body of the angle. The Abstract describes the Young Dental DPA as:
A plastic, disposable, easy-to-assemble dental angle is provided. The angle includes a one-piece hollow body having a head at its front end which is angled with respect to the body. Both the head and the body have a bore therethrough. The head has an aperture which is centered with respect to the bore of the body to allow insertion of a drive gear through the head of the angle. A drive gear is inserted in the head from above. A snap cap fits within the head over the driven gear to lock both the drive gear and the driven gear in the angle. A sheath on the cap covers the aperture. A latch on the cap is received in the aperture to lock the cap to the head to hold the angle together. An elongated slot in the body permits the body to be force-fit on a dental handpiece. In one embodiment, the length of the angle is shortened so that the thrust load produced during use is carried by a rolling contact in the handpiece to which the angle is secured, rather than by a sliding friction-producing contact, between the drive gear's shaft and the surface of the angle itself. (emphasis added)
Claim 1 addresses the aperture as "receiving means at the front of said head part"; Claim 10 addresses the aperture as "aperture means in said front side of said head for receiving a one-piece drive gear"; and Claim 12 addresses the aperture as "said head having an aperture at the front of said body centered with respect to said body ...".
Having interpreted Claims 1, 10, and 12, the Court's next step is to determine whether the limitation regarding the existence and location of the aperture is found in Q3's DPA. Defendants, by describing its DPA's "head" as only the hinged part on top of the body of the device, points out that it is solid with no aperture. They obliquely refer to their device as having a hinged "head" which swings open to allow internal parts to be loaded directly into the body of the device. They do not provide any specificity as to how the internal parts are directly loaded into the body of the device. The defendants contend that their "hinged head" eliminates the need for a head and separate cap.
Plaintiff's experts testify that the reason that the internal parts can be inserted directly into the body of Q3's DPA is because an aperture is exposed when the hinged "head" is lifted. A review of the drawings and the device samples reveals that in both devices an aperture exists at the top of the device. The question is what constitutes the "head" of the Q3 device. Is the hinged part of the device its "head" or does the hinged part merely serve as a substitute for a separate cap? If the hinged part operates as a connected cap, does this make the portion of the body wherein the aperture lies, in reality the "head" of the Q3 DPA, and does the aperture then exist at the front of the head?
The Court finds that the plaintiff has presented sufficient evidence from which a reasonable jury could conclude that the "hinged" portion of the Q3 DPA is not the "head" so that the location of the bore opening in the accused device meets the limitation as set forth in the '547 Patent claims, and thus, the Q3 DPA infringes upon Claims 1, 10, and 12 of the plaintiff's patent. The Court concludes that a genuine issue of material fact *1345 exists which precludes a grant of summary judgment.
NOTES
[1] When Q3 was first formed, defendants Kraenzle and Chris Carron were the only two shareholders; however, during the next two years of operation, shares were also issued to another minority shareholder, Nick Carron (defendant Chris Carron's brother).